744

## In re RIOS.

District Court, S. D. New York.
May 15, 1939.

John Lane, of New York City, for George E. Lane's estate, objecting creditor.

Daniel Levy, of New York City, for bankrupt.

CONGER, District Judge.

The objecting creditor, the Estate of George E. Lane, herein objects to the discharge of the bankrupt upon three grounds and has filed specifications thereof.

The first charges the failure to keep books of account or records, and the second charges the destruction of check books and check stubs. These two specifications will be considered together.

The bankrupt, Rafael Rios, had not been in business for a long time. He was a salesman employed by different coal companies between March, 1934 and March, 1937, and received a salary of $500 to $600 per month. In March, 1937, the firm of Rios and Company, Inc., was organized. He became its president and salesman, but according to the testimony before the Referee, had no financial interest in the said company, but had received a salary of $600 per month at the outset, later reduced to a smaller sum. He was also to receive one-third of the profits.

The bankrupt was not in business for himself at any time, apparently, but received a stated sum at stated periods by way of salary. This in no way would necessitate his keeping books of account. He had fixed income and fixed charges, all of which he was able to state and to narrate. He stated that for many years he did not have a bank account. It is significant that when he did receive a check of $1,000 for the purpose of paying the expenses of the Rafael Rios and Company, Inc., he deposited this in the bank and drew checks thereon.

The failure to keep books of account, or the destruction of them, is not an absolute bar to the discharge of a bankrupt. The case of In re Weismann, D.C., 1 F.Supp. 723, is almost a parallel case. There the Court stated, and it can be applied to this case, as follows: "Here the bankrupt had not been in business on his own account for many years. He had been employed by various corporations, in some of which he seems to have had a stock interest. The greater part, if not all, of his living had come from salary received. It would doubtless have been better business practice to have kept personal books of account showing receipts and expenditures, but we know that few men in such a situation actually do so. The failure of the bankrupt to keep books was therefore justified, and this specification has not been sustained."

■ Neither do I think the second specification should be sustained. As stated before, the character and. amount of the expenditures described by the bankrupt render it improbable that his check books and check stubs would have disclosed something to the contrary respecting his financial condition. This charge of destroying checks and check books only applied to a nine month period, and which monies, he testified, were deposited for the initial expenses of the corporation. His testimony was that for many years he did not have a checking account, and undoubtedly, were it not for the fact that he received this check for the initial expenses of the formation of the corporation, this checking account would not have been opened. I cannot find from the evidence that the destruction of the checks and the check books was done with the intention of concealing his financial condition from his creditors.

The third specification, however, presents a different situation. The objecting creditor, on or about February 19, 1934, obtained a judgment against the bankrupt in the sum of $8,000.

From June, 1934, to December, 1936, the bankrupt paid approximately $50 a month on account of the judgment. This was paid pursuant to an arrangement, no garnishee being issued against the salary of the bankrupt. His examination in supplementary proceedings was kept open and adjourned from time to time. At this time, the bankrupt was employed and earning about $6,000 per year. At the end of 1936 he resigned his position and also discontinued his payments on account of the judgment. So the matter stood until on or about March 25, 1937. In the meantime, what had become of the supplementary proceedings I am unable to tell from the record, except that it may be inferred that it was still open. Then a letter of March 25, 1937, was written, the first paragraph of which reads as follows: "Mr. Rios has requested me to further adjourn his examination in supplementary proceedings to July 5, 1937, upon the representation that at the present time he is not employed, except that he has this month organized a corporation to deal in coal, the stock of which has been subscribed for by his nephews."

Based on this letter, supplementary proceedings were adjourned until July, 1937; from what date, the record does not state.

The fact that the letter was written, is some indication that the renewal of the supplementary proceeding was imminent. Had this proceeding gone on and. had the bankrupt been examined, it would have shown that at the time the letter was written, he was employed as the president of the concern and as salesman for the same, and receiving $600 a month salary.

There is some contention that the attorney who wrote the letter was acting as attorney for the bankrupt, he having previously been attorney for the objecting creditor in the collection of this judgment.

■ I think all of the circumstances surrounding the writing of the letter, the cause for the writing of the same, and the entire circumstances should be fully inquired into. It may very well be that this letter might be such an instrument, within the contemplation of Section 14b(3) of the Bankruptcy Act, 11 U.S.C.A. § 32 (b)(3), and that all of the circumstances, if fully inquired into, might bring the entire transaction within the aforesaid section of the Bankruptcy Act, and might show that the bankrupt had obtained credit or extension or renewal of credit, by making or publishing or causing to be made or published, in any manner whatsoever, a materially false statement in writing.

I would suggest that the bankrupt be re-examined concerning, among other things, the matters hereinbefore specifically set forth and that such other proof be taken, to bring out fully the whole transaction, and that this matter thereafter be reconsidered by the learned Referee.