In the Matter of Jay Harold
GALBRAITH, Debtor.

Betty McCUE, Plaintiff,

v.

Jay Harold GALBRAITH, Defendant.

Bankruptcy No. 81–701.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Jan. 27, 1982.

Jack D. Hoogewind, Ridge Manor, Fla.,
for plaintiff.

Neil G. Kiefer, St. Petersburg, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding and the matter in controversy is a right to a general discharge of Jay Galbraith, the Debtor involved in the above captioned Chapter 7 case. The Debtor's right to a general discharge is challenged by Betty McCue, the plaintiff who instituted this adversary proceeding by a complaint which sets forth two distinct grounds any of which if established would warrant a denial of the discharge.

The first is based on § 727(a)(2) and charges that the Debtor concealed an organ valued at $10,000 with the intent to defraud his creditors. It also charges that the Debtor also concealed other property, but the complaint fails to identify these items. The second is based on the charge that the Debtor committed a false oath in bankruptcy in that he failed to list the organ as his asset and a certain 1968 Chrysler motor vehicle. The Plaintiff also charges that the Debtor by failing to truthfully answer question 1B on the Statement of Affairs which called for a disclosure of all aliases used during the past six years, committed the false oath which in turn would warrant the denial of the discharge by virtue of § 727(a)(4)(A).

The facts relevant as developed at the final evidentiary hearing reveal the following:

Jay Harold Galbraith (the Debtor) is a musician-entertainer by profession and was, prior to 1977, the owner of a Wurlitzer organ and some other musical instruments. In 1976, the Plaintiff loaned $20,000 to the Debtor for the purpose of enabling the Debtor to invest in a restaurant. This obligation is evidenced by a promissory note (Pl's Exh. # 1). The Debtor made 15 payments on this note, the last payment having been made in February of 1978, but has not made any payments on the note since. In due course, the Plaintiff filed a suit to collect the note and on June 27, 1978, obtained a partial final judgment in the amount of $1,934.51.

It further appears that the Debtor lives with one Cheri Turner in one household since 1974 although they are not married to each other. According to the testimony of the Debtor, Cheri Turner loaned money to him repeatedly. At one point in time, in order to secure advances allegedly made to him by Ms. Turner in the amount of $10,500, the Debtor executed a mortgage on property owned by him. This property was ultimately sold and Ms. Turner received a full satisfaction of this mortgage. While there is some intimation that at the time the mortgage was executed Ms. Turner was dissatisfied with the amount to be secured by the mortgage, there is no evidence that she instructed the attorney to change the amount which was to be secured or that she was given any additional security. On February 1, 1978 the Debtor executed a bill of sale which purported to convey several musical instruments including the organ in question to Ms. Turner for $4,000 to be credited against the monies still allegedly owed to her. This Bill of Sale (Def's. Exh. # 1) was, allegedly kept in Ohio in a diaper bag, together with some other papers in the house of the mother of the Debtor and was not retrieved by her until after the commencement of this present action.

There is no corroborating evidence in this record that this alleged Bill of Sale was, in fact, in the house of the Debtor's mother until August of 1981 as claimed or that she knew of the existence of this Bill of Sale. Ms. Turner's mother who is subject to subpoena and was available to be called as a witness, but was not called to testify was also supposed to have knowledge of the existence of this Bill of Sale.

It is without dispute that the Debtor never lost control and possession of the organ in question; that he kept using the same in his work as an entertainer; that he is still using it and allegedly paying Ms. Turner $25 per week for the use of the organ.

According to the financial statement in evidence (Exh. # 5) at the time he became indebted to Ms. Turner between October of 1976 and February of 1978, the Debtor had a net worth of $140,000 which included as an asset $45,600 in Certificates of Deposit, $6,050 in cash, and he was also supposed to have $13,150 in cash value in an insurance policy. In addition, the Debtor also had steady employment during the relevant period and earned at least $300 per week.

It is without dispute that the Debtor used several aliases during the six years preceding the date he filed his petition for relief on April 27, 1981. His original petition merely indicates that he was known as Jay Harold Galbraith a/k/a J. H. Galbraith. In his original Statement of Affairs filed with the petition in response to the question which called for a disclosure of any other names used by a Debtor during the preceding six years of filing, the Debtor answered "no." In an amendment to the petition filed after the commencement of the present proceeding the Debtor added in addition to the name Galbraith the names: "Criss" a/k/a J. H. Turner, a/k/a J. C. Turner, a/k/a Jim Gary, a/k/a James Gary. The fact of the matter is the Debtor entered into a lease of a condominium under the name of J. H. Turner. The record reveals that the Debtor did state to a customer in the cocktail lounge where he worked that the organ he was playing is his and also stated that in addition to the organ, other instruments on the stage were also owned by him. These are the relevant facts which, according to the Plaintiff, are sufficient to warrant the conclusion that the Debtor did, in fact, commit the false oath and is also guilty of the charge of concealment.

■ Before discussing the claims asserted by the Plaintiff, it is well to point out at the outset that at the trial on the complaint objecting to discharge, the objecting party has a burden of proving the facts essential to the objection. Bankruptcy Rule 407. Since there is nothing in the Bankruptcy Code which is contrary to the requirement of this Rule, Rule 407 is still viable and

applicable to cases filed under the Code. 1979 *Collier's Pamphlet Edition* on *Bankruptcy Rules* at p. 159; see also, *H.R. 95–595* at p. 308, U.S.Code Cong. & Admin. News 1978, p. 5787.

The first claim for relief is based on § 727(a)(4)(A) of the Bankruptcy Code which provides as follows:

§ 727. *Discharge*

"(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account; . . . ."

■ To sustain the charge under this Section it must appear from the record by persuasive evidence that the Debtor made, either directly or indirectly, a false statement in connection with the case and which was material and it was made with the specific intent to defraud and was made knowingly. The proof presented in support of the charge must be persuasive and convincing. Considering this charge in light of the foregoing, this Court is satisfied that the Plaintiff has failed to establish with the requisite degree of proof that the Debtor is guilty of committing the false oath and, therefore, it would not be warranted to deny the Debtor's discharge on this ground. This conclusion is based on the following:

The alleged false oath relates to the Debtor's failure to disclose on his original petition his aliases used by him during the preceding six years. It is difficult to conceive that such an omission is made with the fraudulent intent simply because an omission of proper names, rather than assists, harms the Debtor. This is so because a failure to disclose names previously used by the Debtor would be an improper scheduling of a debt incurred under the nondisclosed name. This being the case, such debt would not be dischargeable by virtue of § 523(a)(3) which removes from the overall protective provisions of the bankruptcy discharge debts which were not listed with the name of the creditor to whom such debt is owed unless such creditor has actual knowledge of the pendency.

This leaves for consideration the remaining charge which relates to the alleged concealment of the organ and the Chrysler automobile. This ground to deny discharge is based on § 727(a)(2)(A), (B) which provides that:

"(a) The Court shall grant the debtor a discharge, unless—

(2) The debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated or concealed or has permitted to be transferred, removed, destroyed mutilated or concealed—

(A) property of the debtor, within one year before the date of filing of the petition; or

(B) property of the estate after the date of the filing of the petition; ..."

 It is clear that this record is devoid of any evidence which would support the charge of the concealment of a 1968 Chrysler. Omission of assets from the schedules, if the assets are of some substantial value, may warrant the conclusion that it was omitted purposefully with the fraudulent intent to secret and conceal the assets in question. *Collier on Bankruptcy*, (15th ed.) ¶ 727.04; *In re Fischer*, 4 B.R. 517 (Bkrtcy., S.D.Fla.1980). On the other hand, non-disclosed assets of no value or of little value would not furnish a basis to impute fraudulent intent to secret and conceal such an asset. There is no evidence in this record that the Debtor had any meaningful cognizable interest in the 1968 Chrysler and, therefore, a non-disclosure of the 1968 Chrysler cannot sustain the charge of concealment.

 This is, however, not the case concerning the Wurlitzer organ. The justification for non-disclosure furnished by the Debtor is simply unacceptable and is not worthy of belief. The alleged transfer of the organ to Ms. Turner was not corroborated by any believable evidence. The Debtor never parted with possession; still has full use and control over the organ; neither the Debtor's mother nor Ms. Turner's mother were called as a witness to support the claim of the transfer, although the testimony of both would have been easily available either through deposition in the case of the Debtor's mother or by live testimony in the case of Ms. Turner's mother who was subject to subpoena and available to testify. Moreover, the debt allegedly owed to Ms. Turner was fully satisfied and paid off from the sale of the property pledged as security for the debt and during the crucial time, the Debtor had more than ample funds which negates and bespeaks against any need to borrow any additional funds from Ms. Turner.

Considering the totality of the evidence in this case, this Court is satisfied that this record more than substantiates the claim that the Debtor knowingly and fraudulently with intent to hinder, delay or defraud creditors, concealed and secreted the organ by using this alleged sham transfer which never really occurred. For the reasons stated, this Court is satisfied that the Debtor is not entitled to discharge.

A separate final judgment will be entered in accordance with the foregoing.