In re William A. KINDORF, Jr., Debtor.

COMMERCIAL NATIONAL BANK OF PEORIA, Plaintiff,

v.

William A. KINDORF, Jr., Defendant.

No. 87–1455–BKC–6P7.
Adv. No. 87–259.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Sept. 19, 1989.

Terry L. McCollough, Orlando, Fla., for defendant.

Lynnea S. Concannon, Orlando, Fla., for plaintiff.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

The plaintiff, Commercial National Bank of Peoria ("Bank"), filed this adversary proceeding objecting to the discharge of William A. Kindorf, Jr., defendant. The complaint alleges: (i) the defendant improperly transferred and concealed assets within one year of the date of the filing of the petition [§ 727(a)(2)(A) & (B)]; (ii) the defendant made material misrepresentations under oath [§ 727(a)(4)(A)]; and (iii) the defendant has failed to satisfactorily explain the loss of assets or the deficiency of assets to meet the defendant's liabilities [§ 727(a)(5)].

The trial was held on July 5 and July 6, 1989, and upon the evidence presented, the Court enters this Memorandum Opinion.

### Facts

The debt owed to the plaintiff is based on the defendant's personal guaranty of a corporate obligation. The corporation defaulted on its note on January 2, 1984. The Bank's credit memorandum reflects that from that date through December, 1986, (when the Bank filed a complaint on the guaranty) there were numerous meetings and conversations regarding the means of satisfying the obligation.

More than a year and a half before filing, the defendant advised the plaintiff that he would file bankruptcy if demand was made on his personal guaranty.

Financial statements submitted by the defendant to the plaintiff in 1981 and 1984 show that he had checking and savings accounts and a full page listing of stocks and bonds held in his name alone.

On June 9, 1987, the Defendant filed his petition seeking relief under Chapter 7 of the Bankruptcy Code

The Defendant's Schedules of Assets show that he owned the following assets:

| | | |
|---|---|---:|
| (a) | interest in a limited partnership | $15,000.00 |
| (b) | certain stock | 00 |
| (c) | wearing apparel, jewelry, firearms, sports equipment and other personal possessions, and | 500.00 |
| (d) | interest in insurance policies | 2,273.04 |
| | TOTAL | $17,773.04 |

Although there was no real property listed as an asset, the defendant claimed the following property exempt pursuant to Florida law: (a) homestead located at 6006 Masters Boulevard, Orlando, Florida; (b) $1,000 of personal property; (c) wages of head of household; and (d) cash surrender value of insurance policies. There were no listed values for the claimed exemptions other than the personal property.

The defendant earned in excess of $113,500 in each of the two years preceding the filing of the bankruptcy. The schedules reflect that the defendant had no property held by another other than "partner in PAC Club, Peoria, Illinois"; that he had made no payments of loans, installment purchases or other debts during the year immediately preceding the filing; that he had not made any gifts, other than ordinary and usual presents to family members, etc., during the year preceding the bankruptcy; and that he had not made any other transfers during the year preceding the filing.

The Schedule of Liabilities states that the defendant has only one creditor—the plaintiff, in the amount of $175,000.

### Transferred and Concealed Assets

The defendant's Statement of Affairs indicates that he has no accounts or rights in thrifts, building and loan, and homestead associations, credit unions, brokerage houses, pension funds, and the like. The Statement of Affairs also shows that he holds no property for any other person. The defendant's Schedules, likewise, reflect that the Debtor had no deposits of money with banking institutions, etc.

The evidence revealed that the defendant concealed the following property and transactions on and after the filing of his Petition:

Swiss Bank Corporation account of $29,000.00;

Flemig–Potter Savings account of $81,457;

Flemig–Potter Supplemental Savings account of $11,597;

IRA account of $11,706;

Fidelity Municipal Bond portfolio held in his wife's name for his use and benefit;

Sole or joint ownership in household goods and their value of $11,129.00;

Golf cart and Gucci watch and their value;

Joint account with his father at NCNB.

Income in the form of gifts from his parents of ($30,000);

Bank accounts held by Mrs. Kindorf on the date of petition (exceeding $9,000);

Payments made to creditors prior to filing;

Transfers of wages, interest and gifts to his wife ($143,000).

An example of the defendant's failure to disclose and to conceal assets may be found in the examination of the Swiss bank account.

The defendant failed to disclose the Swiss bank account on either of his two Amendments to Schedules, or when specifically questioned about the accounts during a deposition. He and his wife failed to produce statements, checks or check registers for the period of time during which deposits were made to the Swiss bank account. Upon the Court's order compelling the defendant, his wife, or his parents to produce documentation relating to the Swiss bank account, the confirmation of the opening of an account and statements were submitted.

The defendant's argument that the Swiss account was opened for his father is refuted by the evidence. The only evidence that supports the defendant's position is that the account was opened in the name "William A. Kindorf," without any "Jr." designation. The account confirmation contained the defendant's address, birthdate, passport number, and instructs that correspondence should be sent to his address.

In all other aspects the evidence shows that the Junior and Senior Kindorf financial affairs were kept scrupulously separate. The defendant's only explanation for handling the Swiss account in a different manner, which the Court does not accept, was the lack of sophistication in his dealing with European banks.

## False Oaths

In this case the Statement of Affairs and Schedules cannot be accepted at face value. The defendant made numerous and significant misrepresentations under oath in or in connection with the case.

The defendant stated in his Statement of Affairs that other than income from his trade or profession, he had earned small amounts of income from two partnerships. Testimony revealed that during the year before filing, the defendant received at least $30,000 in gifts from his parents which he failed to disclose.

The defendant also stated that he had no accounts in banks, savings and loans, pension funds, either alone or together with any other person in his own name or any other name within two years preceding the filing. In fact, the defendant held five accounts in his name alone, totalling over $133,000.00.

In response to the question whether the defendant had any property held by another, he responded, "partner in PAC Clubs, Peoria, Illinois." In fact the defendant had transferred all of his income from wages, distributions and gifts to his wife who held the assets for his use and benefit. On the date of petition, Mrs. Kindorf held three accounts (totalling over $9,000.00) and a Fidelity Municipal Bond portfolio for his use and benefit. Neither the transfers nor the fact that assets are held on his behalf are disclosed.

The defendant stated that other than ordinary gifts, he had made no transfers of property within the previous two years. The evidence is uncontroverted that within the year prior to filing, he transferred in excess of $143,000 to his wife. These funds were comprised of salary, income from a partnership interest and $30,000 in gifts from his parents.

The defendant failed to disclose the transfer or accumulation of these significant assets in any manner.

The defendant stated that he had made no payments on installment loans, credit cards, etc. Testimony revealed that he had made substantial payments to his creditors including, but not limited to, mortgage and credit card payments. These payments were made from the accounts held for his benefit by his wife.

The Schedules constitute further misstatements in connection with the case in that the defendant stated that he had no creditors other than Commercial National Bank, when in fact, he had substantial additional debt, including two mortgages on his home.

After the meeting of creditors, depositions of the Defendant and his wife, and the filing of this adversary proceeding, the defendant filed his first Amendment to Schedules disclosing only the ownership of the home by the entireties with his wife and his IRA account.

His second Amendment to Schedules was filed in October, 1988, well over a year after he filed his petition. That amendment shows only his ownership by the entireties of household goods in the amount of $5,000.

## Loss of Assets

The testimony indicated that the Defendant's payments on two mortgages did not exceed $34,000 per year; that his wife's automobile is fully paid for; and that the Defendant's employer provided a company car for Mr. Kindorf's use. The Defendant and his wife have not had any major illnesses, and have no dependents.

## Discussion

### Transferred and Concealed Assets

■ 11 U.S.C. § 727(a)(2)(A) & (B) provides in relevant part:

(a) The Court shall grant the debtor a discharge, unless—

.    .    .    .    .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor within one year before the date of the filing of the Petition; or

(B) property of the estate after the date of the filing of the petition; . . . .

The evidence is undisputed that the defendant transferred his salary, income from a partnership interest, and gifts to his wife throughout the year prior to his filing bankruptcy.

The defendant's failure to disclose such assets and the continued lack of disclosure during the progress of the case, constitute the concealment of property of the estate.

In order to prove a violation of 11 U.S.C. § 727(a)(2)(A) and (B), however, the plaintiff must prove actual intent to hinder, delay, or defraud creditors rather than constructive intent. *In re Hubbard, (Poolquip-McNeme, Inc. v. Hubbard)*, 96 B.R. 739, 18 B.C.D. 1347 (Bankr.W.D.Texas 1989); *In re Cutignola, (Bologna v. Cutignola)*, 87 B.R. 702 (Bankr.M.D.Fla.1988).

■ Actual intent, however, may be inferred from a consideration of all of the circumstances. *Id.; In re Reed*, 700 F.2d 986, 991 (5th Cir.1983). Under the facts of this adversary proceeding, it can easily be inferred that the defendant intended to hinder, delay and defraud his creditor through his systematic transfer of all his assets to his wife, the accumulation of assets only in her name, and the failure to disclose relevant information in his Statement of Affairs and Schedules.

Although the defendant transferred his income from all sources to his wife, he retained the use and benefit of the funds and the assets for himself. He effectively put the assets beyond the reach of his creditors, yet continued the control of the property he had transferred. A similar arrangement was found to depict a constructive trust and to signify fraud in *In re Dorricott*, 5 B.R. 192, 195 (Bankr.N.D.Ohio 1980).

The Court finds that the bank accounts and bond account are held in constructive trust and that the trust is indicative of the fraudulent intent of the Debtor in transferring and concealing his assets both within the year before the date of filing and even after the filing.

The Defendant denied, under penalty of perjury, that he had made any gifts to family members, other than ordinary gifts, or that any person held anything of value in which he had an interest. The Defendant offered no justification for his failure to disclose the $30,000 in gifts received from his parents or his transfer of those funds to his wife other than that he did not consider gifts "income."

He defends his transfer of wages to his wife and his failure to disclose the transfer by taking the position that he could have exempted the wages when he transferred them to his wife.

It is not the Defendant's prerogative to judge for himself what will benefit the creditors but rather for the creditors and trustee to make this decision. *Chalik v. Moorefield, Jr. (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984).

■ Further, prior to the date of the petition, the wages had been converted to assets or were deposited in accounts maintained by the Defendant's wife and commingled with her funds as well as the Defendant's funds from other sources. As a result, the Defendant could not have claimed the wages as an exemption as of the date of the petition because the wages were not in an account maintained by the Defendant which could be traced and properly identified as wages, as required by Fla.Stat. § 222.11. See also, *In re McCafferty*, 81 B.R. 99 (Bankr.M.D.Fla.1987), (commingled funds in an account precluded ability to trace and identify wage funds defeating a claim of exemption). The assets concealed by the defendant, as set forth above exceed $150,000 in value. The fact that numerous, major assets were omitted from the defendant's Schedules, alone, will satisfy the intent requirement. *In re Topping, (Crews v. Topping)*, 84 B.R. 840 (Bankr.M.D.Fla.1988); *In re Galbraith, (McCue v. Galbraith)*, 17 B.R. 302, 304 (Bankr.M.D.Fla.1982) (omission of assets of substantial value from bankruptcy schedules may warrant conclusion that assets were omitted purposefully with fraud-

ulent intent to secrete and conceal assets in question, so as to preclude discharge); *In re Fischer,* 4 B.R. 517 (Bankr.S.D.Fla. 1980).

The Court finds that the Defendant transferred and concealed property of the Defendant within one year before the date of filing. He also concealed property of the estate after the date of the filing and all was done with the intent to hinder, delay and defraud a creditor. Pursuant to 11 U.S.C. § 727(a)(2)(A) and (B), the Defendant is not entitled to a discharge.

### False Oaths

■ 11 U.S.C. § 727(a)(4) provides in relevant part:

(a) The Court shall grant the Debtor a discharge, unless

.    .    .    .    .

(4) the Debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account. . . .

See also: *Crews v. Topping (In re Topping),* 84 B.R. 840 (Bankr.M.D.Fla.1988); *In re Galbraith,* 17 B.R. 302 (Bankr.M.D. Fla.1982). The intent must be actual intent, however, a finding of actual intent may be based on circumstantial evidence or on inferences drawn from a course of conduct. *Topping* at 841 (citing *In re Devers,* 759 F.2d 751 (9th Cir.1985) and *Farmers Co–Op Association v. Strunk,* 671 F.2d 391 (10th Cir.1982)).

In *Topping,* this Court held:
Where assets of some substantial value are omitted from the Schedules, the conclusion that they were omitted purposefully with the fraudulent intent to conceal the assets in question may be warranted . . . only where the non-disclosed assets were of little or no value will such fraudulent intent not be imputed.

*Topping,* at 842.

■ In that case the Defendant's failure to list her three year old car and an interest in real estate were held to be a material omission. That, together with "conduct which is inconsistent with fair and honest disclosure . . ." resulted in her forfeiture of a discharge. *Topping, supra* at 842.

In the present case, the fraudulent misstatements and omissions are numerous and deal with substantial value. Rather than a "fair and honest disclosure," or inadvertent omissions, it is apparent that the defendant carefully analyzed each asset and the justification he would use for failing to disclose the same.

The Defendant suggests that it was not necessary to disclose his pension and savings plans because he determined them to be the res of a spendthrift trust which would not be property of the estate. The Statement of Affairs clearly requires the disclosure of pension funds and savings plans.

The subject matter of a false oath has been determined to be "material" and thus sufficient to bar a discharge in bankruptcy, if it bears a relationship to the Debtor's estate, or concerns the discovery of assets, or the existence in disposition of his property. *In re Chalik, (Chalik v. Moorefield, Jr.),* 748 F.2d 616, 618 (11th Cir.1984). Further, the *Chalik* court stated that the "recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious . . . Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *Id.* at 618.

In this case there can be no question that the assets which the defendant refused to disclose are material.

The Court finds that the defendant knowingly and fraudulently made numerous false oaths and pursuant to § 727(a)(4)(A) is not entitled to a discharge.

### Loss of Assets

■ 11 U.S.C. § 727(a)(5) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless

.    .    .    .    .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any

loss of assets or deficiency of assets to meet the debtor's liabilities....

The evidence is undisputed that the defendant received income in excess of $143,500 in the year prior to filing bankruptcy; that the mortgages on his home did not exceed $34,000; that his wife's automobile is fully paid for; that his employer provided a company car and paid the expenses; that he and his wife did not have any major illnesses; that they did not acquire major household goods; and that they had no dependents.

The defendant has failed to explain satisfactorily the deficiency of assets to meet his liabilities, requiring a denying of the discharge pursuant to 11 U.S.C. § 727(a)(5).

### Conclusion

The facts and law justify the denial of the discharge. A separate final judgment will be entered.