**In re John H. WILBUR, Debtor.**

**Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, in his official capacity as Receiver of George Washington Life Insurance Company, Plaintiff,**

v.

**John H. WILBUR, Defendant.**

**Bankruptcy No. 96–3562–BKC–3P7.**
**Adversary No. 96–505.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 15, 1997.

Raymond R. Magley, Smith Hulsey & Busey,Jacksonville, FL, for plaintiff.

Ronald Bergwerk, Jacksonville, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court on Plaintiff's Second Amended Complaint objecting to Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), and (a)(5). (Adv.Doc. 5). After trial on May 15, 1997, and May 19, 1997, the Court dismissed Count II of the complaint objecting to Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4). On the remaining issues, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. From 1980 until 1990, John H. Wilbur (Defendant) was Chairman of the Board and Chief Executive Officer of George Washington Life Insurance Company (GWL). (Tr. at 69). In 1990, the Circuit Court in West Virginia appointed Hanley C. Clark (Plaintiff) as receiver of GWL. (Tr. at 69–70). In 1993, Plaintiff sued Defendant and other officers and directors of GWL in the United States District Court for the Southern District of West Virginia. (*Id.*). On April 10, 1995, the jury entered a verdict against Defendant and other directors, and awarded damages of $13,615,258. A partial final judgment was entered on April 12, 1995. (Pl.'s Ex. 15). On July 7, 1995, the West Virginia Court reduced the total award of damages to $6,198,591.34 (after settlements) and entered a final judgment order. (Tr. at 7C, Pl.'s Ex. 16).

2. During 1995, Defendant had four checking accounts which he used for personal matters. He had checking accounts with Barnett Bank, SouthTrust Bank, Enterprise National Bank, and USAA Federal Savings Bank. Defendant also had a money market account with Barnett Bank. (Tr. at 18–19).

3. Between March 13, 1995, and January 12, 1996, Defendant deposited over $200,000 into these five accounts. (Pl.'s Ex. 3–8).

During this time period, Defendant also withdrew over $130,000 from these accounts by (i) writing checks payable to cash or to Barnett Bank, (ii) obtaining cash from checks which were deposited or (iii) purchasing travelers checks. (Pl.'s Ex. 9). All but three withdrawals were made after the West Virginia jury verdict.

4. In addition to making the withdrawals, between April and December 1995, Defendant also transferred over $50,000 between his accounts. (Pl.'s Ex. 3,4,5,6,8).

5. On January 11, 1996, the West Virginia court entered an order granting Plaintiff's post-judgment motion which required Defendant to turn over to Plaintiff his interest in a home in Ponte Vedra Beach, Florida and his IRA's. Defendant appealed the order and filed a motion for stay pending appeal. On March 18, 1996, the motion was denied. (Tr. at 70–72, Pl.'s Ex. 17–19).

6. Between March 18, 1996 and April 9, 1996, Defendant cashed over $30,000 in traveler's checks. The cash withdrawals from Defendant's bank accounts were used to purchase $23,800 of these traveler's checks. Defendant does not recall where he obtained the cash to purchase the remaining traveler's checks. (Tr. at 43–56, 67–68, Pl.'s Ex. 13).

7. On June 14, 1996, less than three months after he cashed the traveler's checks, Defendant filed his chapter 7 petition. Defendant's schedules show that at the time of the petition, he had only $87 in cash and $519 in his bank account. (Pl.'s Ex. 1).

8. Plaintiff alleges that Defendant is not entitled to a discharge under 11 U.S.C. § 727(a)(5) because he did not satisfactorily explain, the loss of the cash withdrawals or the money obtained from the traveler's checks cashed within three months of the petition. Plaintiff also alleges that Defendant is not entitled to a discharge under 11 U.S.C. § 727(a)(3) because he did not keep any records from which Plaintiff could ascertain what happened to the cash withdrawals or the proceeds from the traveler's checks. Plaintiff further alleges that Defendant is not entitled to a discharge under 11 U.S.C. § 727(a)(2)(A) because he withdrew over $49,000 from his accounts within one year of

his petition with the intent to hinder, delay, or defraud the Plaintiff. Finally, Plaintiff alleges that Defendant is not entitled to a discharge under 11 U.S.C. § 727(a)(2)(B) because he transferred or removed post-petition $7,500 from the estate with the intent to hinder, delay, or defraud his creditors and the trustee.

## CONCLUSIONS OF LAW

### A. 11 U.S.C. § 727(a)(5)

Plaintiff first alleges that Defendant's discharge should be denied because Defendant has failed to explain the loss of cash assets pursuant to 11 U.S.C. § 727(a)(5). In relevant part, the statute provides:

(a) The court shall grant the debtor a discharge, unless-

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(5)

■ Plaintiff bears the burden of proving, by a preponderance of the evidence, that the Defendant's discharge should be denied. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Chalik v. Moorefield (In re Chalik )*, 748 F.2d 616 (11th Cir.1984). If the Plaintiff meets this burden, the burden then shifts to the Defendant to prove that he is entitled to a discharge. Under 11 U.S.C. § 727(a)(5), the Defendant would be required to provide a satisfactory explanation for his loss of assets. *Hawley v. Cement Industries, Inc. (In re Hawley )*, 51 F.3d 246, 249 (11th Cir.1995). The Eleventh Circuit Court of Appeals has stated that "[v]ague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *Id.* (quoting *Chalik v. Moorefield (In re Chalik )*, 748 F.2d 616, 619 (11th Cir. 1984)). This Court has held that a debtor's explanation of loss "requires more than undocumented, unsupported vague generalities ... An explanation must convince the court of the debtor's good faith and businesslike conduct." *Grant v. Simmons (In re Simmons )*, 113 B.R. 741, 741, 745 (Bankr.

M.D.Fla.1990). The debtor's explanation should not arouse suspicion regarding the loss of assets. *Id.* General assertions that money was spent on living expenses or lost through gambling, without documentation, are unacceptable. *Manhattan Leasing Systems, Inc. v. Goblick (In re Goblick )*, 93 B.R. 771, 775 (Bankr.M.D.Fla.1988).

### 1. Cash Withdrawals

Plaintiff alleges that Defendant's discharge should be denied because he has failed to explain the loss of over $130,000 in cash withdrawals taken from his accounts. The Court finds that Plaintiff has met his burden of proving that Defendant lost substantial cash assets shortly before his petition was filed. Thus, the Defendant bears the burden of explaining the loss of those assets.

■ Defendant first testified, in general terms, that he used the cash withdrawals to provide gifts to his children, to make deposits in other bank accounts, to travel, to pay for living expenses, and to pay moving expenses. He also stated that he could not recall how or where he spent a great deal of the money. (Tr. at 23–42).

On the second day of the trial, Defendant attempted to provide further explanation of how he used the cash withdrawals. (Tr. at 84–85). He testified that he used $12,000 to pay the Internal Revenue Service. (Tr. at 85). Plaintiff, however, produced conflicting evidence, showing that a portion of the check Defendant claims to have cashed to pay the IRS was actually used to purchase a traveler's check. (Tr. at 75).

Next, Defendant stated that he gave his son $25,000 as a down payment for a house. (Tr. at 85). However, Defendant's testimony was not corroborated by documentary evidence or by testimony by his son. Defendant also testified that he spent $2,000 to $3,000 on gifts and meals for his other children. (*Id.*). This information, however, was omitted from his earlier testimony when he was questioned about how the money was utilized.

Defendant testified that he spent $33,000 on trips in 1995. (*Id.*). However, his testimony regarding the trips was vague, and

Defendant provided no receipts to verify his claims that the cash withdrawals funded those trips. Additionally, evidence provided by the Plaintiff suggests that over $23,000 of the withdrawals were used to purchase traveler's checks which were cashed between March and April 1996. (Pl.'s Ex. 13). Plaintiff asserts that these funds could not have been used for travel in 1995.

Defendant claimed he spent $3,500 on moving expenses, but was unable to provide documentary proof of such expenses. (Id.). Also, he claimed to have spent $30,000 on living expenses, but provided no records or receipts. (Id.).

Defendant stated that he spent $3,500 on Christmas gifts and automobile expenses, but again, his testimony is uncorroborated by documentary evidence. (Id.).

Finally, Defendant claims he deposited $12,000 to $15,000 into his bank accounts and used those funds to make a loan to his P.A. However, no loan documents exist to verify that the loan existed.

The Court finds that Defendant's explanation of the loss of the cash withdrawals is unsatisfactory. Defendant has not provided documentary evidence to corroborate his testimony regarding how the money was utilized. Defendant's general assertions of how he spent the money withdrawn from his accounts are vague and indefinite, and the Court finds that the Plaintiff has met his burden of proving that the Defendant's discharge should be denied for his failure to explain the loss of the withdrawals.

### 2. Traveler's Checks

Plaintiff also alleges that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5) because Defendant has failed to explain the loss of over $30,000 he received from cashing traveler's checks. The Court finds that the Plaintiff has met his burden of proving that Defendant received cash proceeds from the use of traveler's checks shortly prior to the filing of his petition.

■ In explaining his use of the traveler's checks, Defendant testified that he remembered how he spent $29,000 of the money he received. (Tr. at 85). First, he testified that he paid $10,000 in property taxes. However, Defendant provided no evidence that he paid those taxes in cash from the traveler's checks. Next, Defendant claims he deposited $12,000 into his checking accounts. This statement, however, is contradicted by Plaintiff's documentary evidence. (Tr. at 93, Pl.'s Ex. 8). Defendant claims he spent $4,000 on travel, but he did not provide details of any travel between April and June of 1996. In addition, he cashed some of the traveler's checks in Jacksonville during that time, so it is unlikely that he took extended trips with the proceeds of the traveler's checks in 1996. Finally, Defendant claims he simply spent $2,000 to $3,000 on living expenses, but provided no further explanation.

Plaintiff argues that Defendant's explanation of where and how he utilized the cash withdrawals and the proceeds from the traveler's checks are unacceptable because they are vague and indefinite.

The Court finds the Defendant's testimony suspect. Defendant offered no documentary evidence to support his testimony regarding how the money was utilized. He depleted his estate of monetary assets quickly after learning of the West Virginia judgment. The Court finds that Plaintiff has met his burden of showing that the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(5) because the Defendant has failed to explain the loss of cash assets.

### B. 11 U.S.C. § 727(a)(3)

Plaintiff also asserts that Defendant's discharge should be denied because he failed to preserve financial records from which his financial condition could be ascertained. In relevant part, the statute provides:

(a) The court shall grant the debtor a discharge, unless

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve, any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was

justified under all of the circumstances of the case [.]

11 U.S.C. § 727(a)(3).

 The Plaintiff bears the burden of showing the Court that the Defendant's financial records are inadequate. *Phillips v. Nipper (In re Nipper)*, 186 B.R. 284, 289 (Bankr.M.D.Fla.1995). Although a full accounting is not required, the Defendant should produce some records from which his financial condition could be ascertained. *Id.* Failure to keep records, however is not an absolute bar to a discharge; each case is decided on the facts peculiar to it. *Barthlow v. More (In re More)*, 138 B.R. 102, 105 (Bankr.M.D.Fla.1992). Some courts have found that no duty exists on a debtor to preserve records. *See In re Rios,* 27 F.Supp. 744 (D.C.N.Y.1939) (finding that a debtor not engaged in business had no duty to keep records of his accounts).

However, courts in this District have held that "[w]hile it is true that the duty to keep books and records is not absolute and depends on the circumstances, it is equally true that one with business dealings as extensive as [Defendant's] should have extensive records from which his financial condition could be ascertained." *Messing v. Urban (In re Urban)*, 130 B.R. 340, 345 (Bankr.M.D.Fla. 1991). *See also Meridian Bank v. Alten,* 958 F.2d 1226, 1231 (3d Cir.1992) (holding that "[s]ophisticated business persons are generally held to a high level of accountability in record keeping.")

In this case, Plaintiff alleges that Defendant failed to keep records from which Plaintiff could ascertain what happened to the cash withdrawals and the proceeds from the cashed traveler's checks. Plaintiff alleges that the Defendant knew of the West Virginia judgment and should have known to preserve records. Plaintiff also alleges that Defendant possessed such records, but failed to present them to Plaintiff until after Plaintiff had subpoenaed them from the banks and other institutions.

 The Court finds that Plaintiff has met his burden under 11 U.S.C. § 727(a)(3). Defendant has been an attorney for more than forty years. He is financially sophisticated.

It is unreasonable that Defendant would dispose of such substantial amounts of cash without preserving records detailing how the money was utilized. The Court finds that Defendant's discharge should be denied because he failed to preserve records from which his financial condition could be ascertained.

### C. 11 U.S.C. §§ 727(a)(2)(A)-(a)(2)(B)

Finally, Plaintiff alleges that Defendant's discharge should be denied pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (B) because Defendant transferred property with intent to defraud creditors within one year of his petition, and he concealed property of the estate after his petition was filed.

### 1. Section 727(a)(2)(A)

 Bankruptcy Code section 727(a)(2)(A) requires the Plaintiff to show that:

1. a transfer occurred;
2. that the property transferred was property of the debtor;
3. that the transfer was within one year of the petition; and
4. that at the time of the transfer, the debtor possessed the requisite intent to hinder, delay or defraud a creditor.

*Barthlow v. More (In re More)*, 138 B.R. 102, 104 (Bankr.M.D.Fla.1992). To prevail under 11 U.S.C. §§ 727(a)(2)(A), the Plaintiff must prove "actual intent to hinder, delay, or defraud creditors rather than constructive intent." *Commercial Nat'l Bank of Peoria v. Kindorf (In re Kindorf)*, 105 B.R. 685, 689 (Bankr.M.D.Fla.1989). Actual intent, however may be inferred from the totality of the circumstances. *Id.* In determining intent, this Court has identified certain "badges of fraud" which are indicative of fraudulent intent:

1. the lack or adequacy of consideration;
2. the family, friendship or close association between the parties;
3. the retention of possession, benefit or use of the property in question;
4. the financial condition of the party sought to be charged both before and after the transaction in question;

5. the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency of threat of suits by creditor; and

6. the general chronology of the events and transaction under inquiry.

*Wade v. Wade (In re Wade,)*, 189 B.R. 522, 525 (Bankr.M.D.Fla.1995).

Plaintiff alleges that in the year prior to his petition, Defendant wrote checks totalling over $49,000. (Pl.'s Ex. 9). Approximately $20,000 of the checks were used to purchase traveler's checks, which were not cashed until five months after their purchase. Plaintiff alleges that Defendant's acts of cashing the checks were transfers within the meaning of § 727(a)(2)(A), and that through these transfers, Defendant intended to hinder, delay, and defraud the Plaintiff.

■ The Ninth Circuit Court of Appeals has recently held that a debtor's transfer of funds between his accounts or withdrawal of funds from his accounts constitutes a transfer as defined by the Bankruptcy Code. *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1282 (9th Cir.1996). This Court agrees that such transactions are transfers within the meaning of 11 U.S.C. § 727(a)(2)(A).

■ In this case, Defendant made transfers of his own property without any consideration. He made them for his own benefit. He was in a desperate financial condition. He made the transfers after learning of the West Virginia judgment, but shortly prior to filing his petition. The Court finds that the Plaintiff has met his burden of proving that Defendant transferred his property within one year of the petition date with an intent to hinder, delay, or defraud the Plaintiff and other creditors. Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

## 2. *Section 727(a)(2)(B)*

The Court also finds that Plaintiff has met his burden of proving that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B) because he failed to turn over estate property to the Trustee after the petition was filed.

Plaintiff argues that on his schedules, Defendant listed two liquidated debts: one due from John H. Wilbur P.A. in the amount of $10,950, and one due from GKN Securities Corporation in the amount of $8,085. (Pl.'s Ex. 1). After the petition, Defendant allegedly received payment from GKN and turned over the payment to the Trustee.

However, when Defendant received $7,500 as a partial payment from his P.A., he used that money to fund a trip to Italy rather than submitting it to the Trustee. Defendant, at his deposition, testified that he did not know he had to turn over the money to the trustee. (Tr. at 78–79). Subsequent to his deposition, Defendant paid tie sums due to the Trustee.

Plaintiff argues that Defendant knew he had to turn over the money from the P.A. to the Trustee, and that his failure to do so demonstrates his intent to conceal, transfer, remove, or destroy property of the estate after the filing of the petition.

■ The Court finds that Plaintiff has met his burden of proving that Defendant's discharge should be denied because he concealed property of the estate, after filing his petition. Although the Defendant has paid the Trustee, the Defendant's conduct was suspect when he knowingly used the funds rather than remitting them to the Trustee in the first instance. The Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B) because Defendant concealed property of the estate after the filing of his petition.

## CONCLUSION

The Court finds that the Defendant failed to explain the loss of assets, failed to maintain adequate financial records, transferred property within one year of his petition with intent to defraud his creditors, and concealed property of the estate after the filing of his petition. Each of these incidents warrants the denial of Defendant's discharge, and the

Court will enter judgment for Plaintiff accordingly.