In re George BENJAMIN, Debtor.

Charles W. GRANT, Trustee, Plaintiff,

v.

George BENJAMIN and Mary L. Benjamin, Defendants.

Bankruptcy No. 96–2123–BKC–3P7.
Adversary No. 96–411.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 12, 1997.

John Moxley, Ocala, FL, for defendants.

Ronald Bergwerk, Jacksonville, FL, for plaintiff.

## FINDINGS OF FACT AND
## CONCLUSIONS OF
## LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding came before the Court upon a Complaint objecting to discharge of Defendant, George Benjamin, pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A), and seeking declaratory relief, turnover of property and accounting from Defendant, Mary L. Benjamin. A trial was held on January 30, 1997, and upon evidence presented, the Court enters the following findings of fact and conclusions of law:

### *FINDINGS OF FACT*

1. George Benjamin and Mary L. Benjamin are husband and wife. (Adv. Rec. 14, at 1–3). On April 12, 1996, George Benjamin filed for relief under Chapter 7 of the Bankruptcy Code. (Main Case Doc. 1).

2. On July 29, 1996, Charles W. Grant (Plaintiff), Trustee, filed a complaint objecting to George Benjamin's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4), in the first three counts of the complaint. (Adv. Rec.1). Plaintiff further seeks declaratory relief, turnover of property, and accounting against Mary L. Benjamin, in counts four, five and six of the complaint. (*Id.*).

3. George Benjamin was the President and a stockholder of a corporation known as "A Straight Flush Enterprises, Inc." (Adv. Rec. 14, at 1). The corporation operated two companies with the fictitious names of "Triangle Cars" and "Triangle Salvage." (Pl.'s Ex. 16, at 4). Triangle Cars managed as many as eight car lots, where used cars were bought and sold. (Pl.'s Ex. 22, at 4). Triangle Salvage sold car parts from old or damaged cars. (*Id.*). Triangle Cars financed its car inventory through a procedure know as "floating," where George Benjamin would go to an auction, buy the used cars, and pay for the cars within thirty to sixty days after purchase date. (Pl.'s Ex. 16, at 11). Triangle Cars also profited by allowing sales persons to work under its dealership license and by earning a percentage of the proceeds of the used cars that were sold. (*Id.* at 12).

4. Triangle Cars operated car lots in the following locations: Belleview, Dade City, Haines City, Tavares, 5050 South Pine Street, 9272 U.S. Highway 441, and two others, of which George Benjamin could not remember the locations. (Pl.'s Ex. 16, at 4–6; Pl.'s Ex. 22, at 6–8). Triangle Cars leased the land on which the car lots were operated. (Pl.'s Ex. 22, at 6–8). George Benjamin initially made a $10,000 investment in A Straight Flush, Inc. (*Id.* at 41–42).

5. Over a period of several months, between May and October 1995, George Benjamin surrendered the dealership licenses under which Triangle Cars operated, and closed the car lots. (Pl.'s Ex. 16, at 4–6; Pl.'s Ex. 22, at 6–8). On October 31, 1995, George Benjamin resigned as President from A Straight Flush Enterprises, Inc. (Defs.' Ex. 1). He transferred his 200 shares of stock in A Straight Flush Enterprises, Inc. to another shareholder, Leo Bright; however, the date of this transfer is unknown. (Pl.'s Ex. 16, at 18). Leo Bright now operates Triangle Salvage. (Pl.'s Ex. 22, at 23).

6. George Benjamin's resignation and subsequent petition for bankruptcy stemmed from a personal injury lawsuit that a former employee, Brian West, of Triangle Salvage brought against the corporation and him individually. (Adv. Rec. 14, at 2). At trial, George Benjamin testified that the corporation did not invest in worker's compensation insurance, the corporation chose not to defend the lawsuit, and he could not afford to defend the lawsuit. Therefore, he filed for protection under the Bankruptcy Code.

7. After Triangle Cars' car lots were closed, all of the cars went to a salvage yard and any monies obtained from these cars were used to pay the bills of Triangle Cars. (Pl.'s Ex. 16, at 15). George Benjamin is currently unemployed and considers himself unemployable due his chronic illness. (Pl.'s Ex. 22, at 8–10). His wife, Mary L. Benjamin, supports him. (*Id.*).

8. Mary L. Benjamin has been an employee with Martin–Marietta (now Lockheed Martin) since January 1986, and is periodically laid off. (Pl.'s Ex. 21, at 5). She stated that she established "50/50 Motors" and

"MLB Management, Inc." because of the sporadic nature of her job. (Adv. Rec. 14, at 3). Mary L. Benjamin continues to work at Lockheed Martin whenever the company recalls her. (Pl.'s Ex. 21, at 6).

9. 50/50 Motors opened for business on October 25, 1995. (Adv. Rec. 14, at 3). 50/50 Motors is not incorporated, and Mary L. Benjamin operates it as sole proprietor. (Pl.'s Ex. 22, at 12). 50/50 Motors operates used car lots, and its purpose is to conduct used car sales. (Pl.'s Ex. 21, at 13). The documentary evidence presented at the trial shows that 50/50 Motors operates car lots at the following seven locations: Belleview, Candlor, Dade City, Haines City, Leesburg, Taveres, 5050 South Pine Avenue and 9272 U.S. Highway 441, in Ocala. (Defs.' Ex. 4; Pl.'s Ex. 3–4).

10. Mary L. Benjamin's experience with the used car business began with her involvement with Triangle Cars. (Pl.'s Ex. 16, at 8–9; Pl.'s Ex. 21, at 8). At Triangle Cars, she remembers managing one car lot, but cannot recall the dates or the physical address of that car lot. (*Id.* at 9). As a part of her managerial duties, she negotiated the lease for the car lot and worked with the sales agents. (*Id.* at 11).

11. Although George Benjamin states that he has no interest in his wife's business, he admits running errands for 50/50 Motors and using the company's vehicle on several occasions. (Pl.'s Ex. 22, at 10–13). George Benjamin is reimbursed for expenses incurred on behalf of the business. (*Id.* at 20–22).

12. At a deposition conducted on November 20, 1996, Mary L. Benjamin stated that the cars at the 50/50 Motors' car lots are owned by the sales agents, who work under 50/50 Motors' dealership license. (*Id.* at 28–30). The business makes its money by charging a fixed fee for completing title work for the cars, and for each car sold, the company gets $100. (*Id.* at 30–32). Mary L. Benjamin, when asked about the car lots that were operated by Triangle Cars and are now being operated by 50/50 Motors, could not answer many of questions, and a majority of

her answers consisted of: "I don't know" or "I can't remember." (*Id. passim*).

13. Mary L. Benjamin, however, acquired some of the used car lots that Triangle Cars operated when her husband was closing car lots between May and October 1995. (Pl.'s Ex. 16, at 8). George Benjamin did not say which Triangle Cars' car lots were acquired by 50/50 Motors, but the evidence shows that the car lots at the following locations were owned by Triangle Cars and are now owned by 50/50 Motors: Belleview, Dade City, Haines City, Taveres, 5050 South Pine Avenue. (Defs.' Ex. 4; Pl.'s Ex. 16, at 4–6; Ex. 22, at 6–8). However, some of these locations have been closed since the filing of the bankruptcy petition. (Pl.'s Ex. 21, at 40–43).

14. At trial, Mary L. Benjamin testified that she purchased assets for her business by using cash and her credit cards. Also, she owned some of the items prior to the business being established. She further testified that George Benjamin did not invest in 50/50 Motors. She further stated that she supported him before his filing bankruptcy and continues to do so now. Her testimony was supported by her employee Lori Garrett Silloway.

15. She further testified that Paul Houseman [1] manages 50/50 Motors' car lots, but she could not answer questions regarding the operation of her business. She further testified that her employee Lori Garrett Silloway handles the office affairs, including the transfer of automobile titles.

16. Lori Garrett Silloway, who was also the office manager for Triangle Cars, is now 50/50 Motors' office manager. (*Id.* at 10; Pl.'s Ex. 22, at 6). She was given the power of attorney to manage the business. (Pl.'s Ex. 21, at 41). At trial, she testified that some accounts receivables that appeared on Triangle Cars' ledger did not belong to "50/50 Motors" or "Triangle Cars," but belonged to other people associated with the business.

17. At trial, George Benjamin testified that he did not transfer any cash, cars, equip-

---

**1.** Plaintiff's Exhibit 22, at 31 provides this spelling: "Houseman." However, Plaintiff's post-trial memorandum of law provides a spelling of "Hustman." (Adv. Rec. 14, at 5).

ment or anything of value to his wife or her business. The only transfer that took place was a Craftsman riding mower, which Mary L. Benjamin testified she gave to George Benjamin as an anniversary gift. George Benjamin stated that he sometimes uses the mower on 50/50 Motors' business, but considers the mower his personal property.

18. The estimated fair market value of 50/50 Motors' assets, including machinery, equipment, furniture, automobiles and other office equipment, is $17,539. (Adv. Rec. 14, at 9 n. 8).

19. Plaintiff argues that George Benjamin is concealing his interest in "50/50 Motors," and that "50/50 Motors" is really "Triangle Cars" with a different name. (Adv. Rec. 14, at 4–5). Plaintiff further contends that George Benjamin is involved in everyday operation of Mary L. Benjamin's business, still has possession of the business and derives benefits from it. (*Id.*). Plaintiff also states that 50/50 Motors acquired $23,344 worth of property in 1995, and Mary L. Benjamin cannot explain the source of those funds. (*Id.* at 4). Plaintiff concludes that Triangle Cars transferred property to 50/50 Motors. (*Id.*). However, there are credit card receipts and bank statements showing that Mary L. Benjamin used some of her funds to purchase some of 50/50 Motors' assets. (Defs.' Ex. 6–10).

### CONCLUSIONS OF LAW

Plaintiff initially contends, in the first three counts of the complaint, that George Benjamin's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A). Plaintiff, in the last three counts of the complaint, seeks declaratory judgment that the assets of 50/50 Motors, which are controlled by Mary L. Benjamin, are property of the estate, turnover of those assets, and accounting. The Court will first address whether George Benjamin's discharge should be denied. Next, the Court will address issues of declaratory judgment, turnover and accounting.

### A. Counts One to Three—Section 727(a)(2) & (a)(4)(A)

Plaintiff initially contends that Defendant's discharge should be denied pursuant to sub-

sections 727(a)(2) and (a)(4)(A) of the Bankruptcy Code, which provides, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the state charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -

. . . .

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with case -

(A) made a false oath or account[.]

11 U.S.C. § 727(A)(2), (a)(4)(A) (1994).

### 1. Section 727(a)(2)(A)

This Court has previously held that denial of discharge under section 727(a)(2)(A) requires the objecting party to show:

1. That a transfer occurred;

2. That the property transferred was property of the debtor;

3. That the transfer was within one year of petition; and

4. That at the time of the transfer, the debtor possessed the requisite intent to hinder, delay or defraud a creditor.

*Mahon v. Milam (In re Milam)*, 172 B.R. 371, 374 (Bankr.M.D.Fla.1994) (quoting *In re More*, 138 B.R. 102, 104 (Bankr.M.D.Fla. 1992)). The objector has the burden of proving that the four elements have been met, and that the debtor should be denied a discharge. *Id.;* Fed. Bankr.R.P. 4005. The standard of proof is preponderance of the evidence. *Milam,* 172 B.R. at 374.

### a. Transfer occurred

The evidence supports Plaintiff's contentions that some of the assets of Triangle Cars were transferred to 50/50 Motors. Mary L. Benjamin acquired some of the used car lots that Triangle Cars operated when her husband was closing the car lots from May to October 1995. (Pl.'s Ex. 16, at 8). The evidence shows that the car lots at the following locations were owned by Triangle Cars and are now owned by 50/50 Motors: Belleview, Dade City, Haines City, Taveres, 5050 South Pine Avenue. (Defs.' Ex. 4; Pl.'s Ex. 16, at 4–6; Ex. 22, at 6–8). In addition, Lori Garrett Silloway was the office manager for Triangle Cars, and later became the office manager for 50/50 Motors. (Pl.'s Ex. 22, at 6; Pl.'s Ex. 21, at 41). Both Mr. and Mrs. Benjamin could not answer many of the questions about the details of their respective companies at the depositions and at trial, and stated that Ms. Silloway was more familiar with the records and operation of both businesses. (*Id.*). It is, however, unclear whether 50/50 Motors also acquired machinery, equipment, furniture, and automobiles from Triangle Cars, and Plaintiff failed to make a clear showing of transfer of these assets. Therefore, the Court concludes that Triangle Cars and George Benjamin transferred to Mary L. Benjamin and 50/50 Motors, the car lots at the following locations: Belleview, Dade City, Haines City, Taveres, 5050 South Pine Avenue, but Plaintiff failed to prove that machinery, equipment, furniture, and automobiles were also transferred by Triangle Cars to 50/50 Motors.

### b. Property transferred was property of the debtor

Property transferred was property of the debtor because George Benjamin was President and twenty-five percent stockholder of A Straight Flush, Inc., the company that controlled Triangle Cars. George Benjamin, through his office manager, Lori Garrett Silloway, operated Triangle Cars. At a 2004 Examination, Mr. Benjamin stated: "I allowed [Mary L. Benjamin] to go ahead and take over some of the locations that we were dropping[.]" (Pl.'s Ex. 16, at 8). Therefore, this second element is satisfied.

### c. The transfer was within one year of petition

The bankruptcy petition was filed on April 12, 1996, and the evidence shows that George Benjamin gave up all interest in Triangle Cars and its car lots in October 1995, the same time Mary L. Benjamin established 50/50 Motors, which in turn, acquired Triangle Cars' car lots. There are approximately seven months between October 1995 and April 1996. Thus, the transfers took place within one year of the petition date.

### d. At the time of the transfer, the debtor possessed the requisite intent to hinder, delay or defraud a creditor

The fourth element is satisfied upon a showing of actual, not constructive, intent. *Milam*, 172 B.R. at 374. Intent can be ascertained from the totality of the circumstances. *Id.* This Court has previously used the following "badges of fraud" to determine intent:

1. The lack or adequacy of consideration;
2. The family, friendship or close association between the parties;
3. The retention of possession, benefit or use of the property in question;
4. The financial condition of the party sought to be charged both before and after the transaction in question;
5. The existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, on set of financial difficulties, or pendency or threat of suits by a creditor; and
6. The general chronology of the events and transaction under inquiry.

*Id.*

In this proceeding, there is no evidence on the consideration given for the car lots that belonged to Triangle Cars and now belong to 50/50 Motors. The relationship between the parties are that of husband and wife. It is, however, difficult to determine if George Benjamin retained possession, benefit or use for the property in question because there is little evidence on that issue.

However, George Benjamin admitted to running errands for 50/50 Motors, helping Mary L. Benjamin out generally with her business, and receiving reimbursements for expenses he incurred on behalf of 50/50 Motors. George Benjamin's financial condition before the transfer and after the transfer is poor. He was faced with a lawsuit from a former employee immediately before giving up his interest in Triangle Cars. Also, the general chronology of events show that George Benjamin was faced with a law suit, he then gave up all interest in Triangle Cars, allowed Mary L. Benjamin to acquire Triangle Cars' car lots, and Mary L. Benjamin then established 50/50 Motors all around the same time. Looking at the totality of the circumstances, Plaintiff has shown by preponderance of the evidence that there is an intent to defraud the creditors of the estate under section 727(a)(2)(A).

On the whole, Plaintiff can meet his burden of proof pursuant to 11 U.S.C. § 727(a)(2)(A) that car lots at the following locations were transferred with intent to hinder, delay or defraud a creditor or an official of the estate: Belleview, Dade City, Haines City, Taveres, 5050 South Pine Avenue, but Plaintiff failed to prove that George Benjamin transferred machinery, equipment, furniture, automobiles or other office equipment of Triangle Cars.

### 2. Section 727(a)(2)(B)

A denial of discharge under 11 U.S.C. § 727(a)(2)(B) requires the objecting party to show that the Defendant has concealed, transferred, removed, destroyed, or mutilated property of estate after the date of the filing of the bankruptcy petition. *See Phillips v. Nipper (In re Nipper)*, 186 B.R. 284, 288 (Bankr.M.D.Fla.1995).

Plaintiff did not produce evidence showing Defendant has concealed, transferred, removed, destroyed, or mutilated property of the estate after the date of the filing of the bankruptcy petition. Therefore, discharge cannot be denied on this ground.

### 3. Section 727(a)(4)(A)

A discharge may be denied under 11 U.S.C. § 727(a)(4)(A) when a debtor makes deliberate false oaths or omissions.

*Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984). A discharge can also be denied where debtor's omission is fraudulent and material. *Id.* An oath or omission is material when what is left out "bears a relationship to the debtor's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." *Id.* The defendant cannot circumvent section 727(a)(4)(A) by claiming that the omitted information has zero or little value. *Id.* However, the Court can consider the value to ascertain whether the defendant has the intent and motivation to deceive, and to determine the materiality of the omissions. *Chevy Chase Fed. Savings Bank v. Graham (In re Graham)*, 122 B.R. 447, 451 (Bankr.M.D.Fla. 1990). Paramount is the veracity of the debtor's statements. *Milam*, 172 B.R. at 375.

In this proceeding, Plaintiff argues that George Benjamin made false oaths when he stated he was not involved in his wife's business, he never visited the business address at 5050 South Pine, and denied helping her find locations for her cars. The evidence supports Plaintiff's contentions because George Benjamin admitted running errands for his wife's business, helped her to find locations for her car lots, and repossessed cars for her business. (Pl.'s Ex. 22, at 10–13). However, Plaintiff fails to show the Court the materiality of these false oaths or how they bear a relationship to the debtor's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property. Therefore, the Court concludes George Benjamin's discharge should not be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

### B. Counts Four and Five—Declaratory Relief & Turnover

Next, Plaintiff seeks a declaratory judgment that the car lots of 50/50 Motors and Mary L. Benjamin are property of the estate, and that those car lots should be turned over the Trustee. First, Plaintiff argues that George Benjamin has a "beneficial" interest in 50/50 Motors and Mary L. Benjamin's car lots, and therefore, they are prop-

erty of the estate pursuant to 11 U.S.C. § 541(a), which states, in relevant part, that: "[T]he commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held . . . all legal or equitable title of the debtor in property as of the commencement of the case." There was no evidence showing that George Benjamin has an interest in the car lots controlled by 50/50 Motors and his wife at the time of the petition. Therefore, Plaintiff's request for declaratory judgment and turnover fails on this ground.

■ Alternatively, Plaintiff argues that "if the Court finds that Mary L. Benjamin owned the business at the time of the petition, the Plaintiff may avoid the transfer pursuant to [11 U.S.C. § 548]." (Adv. Rec. 14, at 8). Although not raised by the pleading, the Court will construe Plaintiff's assertion under 11 U.S.C. § 548 as an amendment to the pleading to conform with the evidence presented at trial pursuant to Fed. Bankr. R.P. 7015. Consequently, the car lots that were transferred to Mary L. Benjamin and 50/50 Motors by George L. Benjamin and Triangle Cars are property of the estate because the Court has previously concluded that George Benjamin fraudulently transferred those assets to Mary L. Benjamin pursuant to 11 U.S.C. § 727(a)(2)(A).

■ Having concluded that Plaintiff may avoid the property fraudulently transferred to Mary L. Benjamin under section 548, the Court now turns to the issue of turnover pursuant to 11 U.S.C. §§ 542(a) and 550(a). Plaintiff seeks a money judgment pursuant to section 550(a) which states, in pertinent part, that:

(a) [T]o the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee[.]

11 U.S.C. § 550(a) (1994).

Here, Plaintiff contends that 11 U.S.C. § 550(a) provides either for a turn over of property or a money judgment, as appropriate, and argues that due to the lapse of time and the ease in which the assets can be dissipated, a money judgment in the amount of $29,229.58 is appropriate. (Adv. Rec. 14, at 9). According to Plaintiff, the $29,229.58 represents the net asset value of 50/50 Motors as of December 1995. (*Id.*). Plaintiff failed to provide the Court with precise information on how he arrived at the $29,229.58 figure. Also, the Court has previously concluded that Plaintiff made a showing that the debtor transferred the car lots at the following locations: Belleview, Dade City, Haines City, Taveres, 5050 South Pine Avenue, but Plaintiff failed to make a clear showing that a transfer occurred as to the office machinery, equipment, furniture, automobiles and other office equipment of Triangle Cars. Therefore, the Court concludes that a money judgment would be inappropriate, but the Plaintiff's request for turnover should be granted.

### C. Count Six—Accounting

■ Plaintiff moves the Court to order Mary L. Benjamin to Account to the Plaintiff for all financial transactions with respect to the subject car lots. However, Plaintiff offered no basis on which the Court would be permitted to enter an order directing accounting of Mary L. Benjamin and 50/50 Motors financial records. Therefore, Plaintiff's request for accounting will be denied.

### CONCLUSION

The Court concludes that George Benjamin's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A), but Plaintiff has failed to meet his burden of proof pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(4)(A). The Court further concludes that Plaintiff's request for declaratory relief and turnover should be granted, but there is no legal basis on which to grant Plaintiff's request for accounting. The Court will enter a separate order consistent with these findings of fact and conclusions of law.

### JUDGMENT

This adversary proceeding came before the Court upon a Complaint objecting to discharge of Defendant, George Benjamin, pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A), and seeking declaratory relief, turnover of property and accounting from Defendant, Mary L. Benjamin. Upon findings of fact and conclusions of law separately entered, it is,

**ORDERED:**

1. Judgment is entered in favor of the Plaintiff, Charles W. Grant, Trustee against the Defendants, George Benjamin and Mary L. Benjamin.

2. The discharge of Defendant George Benjamin is denied pursuant to 11 U.S.C. § 727(a)(2)(A).

3. Plaintiff's Motion for declaratory judgment is granted and the car lots at the following locations are declared property of the debtor's estate and should be turned over to the Trustee within ten (10) days from the date of this order: Belleview, Dade City, Haines City, Taveres, 5050 South Pine Avenue, in Ocala.

4. Plaintiff's request for money judgment and accounting is denied.

5. The Office of The Clerk shall notify creditors of the denial of the Defendant George Benjamin's discharge.