In re Jennifer A. **FRISKNEY**, Debtor.

**Alexander G. Smith, as Chapter 7 Trustee, Plaintiff,**

v.

**Robert Friskney and Columbia Data Products, Inc., Defendants.**

Bankruptcy No. 98–08990–3F7.
Adversary No. 01–008.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

March 7, 2002.

Raymond R. Magley, Smith Hulsey & Busey, Jacksonville, FL, for plaintiff.

R. Edward Cooley, Longwood, FL, for CDP.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court upon the complaint filed by Alexander G. Smith, as Chapter 7 Trustee, against Robert Friskney and Columbia Data Products, Inc. for turnover of property of the estate pursuant to 11 U.S.C. § 542 and to avoid a post-petition transfer pursuant to § 549. Upon the evidence presented at the trial in this adversary proceeding held December 5, 2001, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Defendant, Robert Friskney ("Friskney") was married to the debtor.

On June 6, 1997, Defendant, Columbia Data Products, Inc. ("CDP"), Friskney, and J.F. of Deltona, Inc. ("JF") entered into a written agreement (the "Agreement"). (Pl.'s Ex. 2.) The Agreement states in the preamble that: (i) Friskney loaned to CDP $10,000.00 as evidenced by a promissory note dated January 13, 1995, (ii) Friskney had previously transferred to CDP without payment certain computer equipment and various other items of personal property, (iii) Friskney had provided other services to CDP for approximately one year and three months without significant payment, both individually and as a consultant and as an agent of JF, a Florida corporation for which Friskney was engaged, and (iv) the parties desired to retire the existing indebtedness owed by CDP and make payment for the equipment transferred to CDP and for Friskney's services.

The Agreement provided that in satisfaction of the indebtedness, CDP agreed to pay to JF $50,000.00 at the rate of $500.00 per week. CDP would make every effort to pay the total amount within two years; however, the total amount would be paid within no more than three years. The Agreement further provided that CDP would make all payments payable to JF, which would be responsible for all taxes due, if any.

Friskney directed CDP to pay the $50,000.00 to JF instead of to him individually. Friskney testified that JF's role was that of a third party trustee to collect the money. Debtor testified that Friskney told her he wanted the money paid to JF for tax reasons. Alan Welsh, the president of CDP, testified that Friskney requested that the payments be made to JF rather than Friskney individually after several conversations between the two regarding the tax consequences. Friskney testified that the arrangement had nothing to do with avoiding taxes.

Friskney signed the Agreement individually and on behalf of JF. He testified that he was authorized by Debtor to execute the Agreement on behalf of JF.

At all times debtor was the sole shareholder, officer and director of JF. Friskney never was an officer, director, employee or independent contractor of JF and was neither paid nor owed a wage or salary by JF.

The only business conducted by JF was a small silk floral arrangement business operated by Debtor out of her house. Debtor testified that the business which started in 1997 was only in existence for a few months and had gross receipts totaling less than $500.00. Debtor used most of the money to purchase new materials and did not deposit it into JF's bank account. The business's only assets were the materials and a small machine used to make the arrangements. There were only a few checks written on JF's bank account to pay for materials. Friskney introduced three receipts totaling $116.80 for the purchase of materials. The items for the silk floral business were not purchased on credit. Debtor testified that the business never had any liabilities. Neither Debtor nor Friskney was aware of any funds earned by the silk floral business being deposited into JF's bank account. Other than the immaterial assets owned by the silk floral business, JF never had any assets except for its bank account. It never had any liabilities.

Between June 1997 and December 1997, CDP made payments to JF pursuant to the Agreement. Most of the checks were made out to J.F. of Deltona, Inc. c/o Robert Friskney. (Pl.'s Ex. 4.) Two of the

checks were made payable to Robert Friskney. The payment amounts were mostly in installments of $500.00 except for some double payments of $1000.00 to catch upon late payments. The total paid was $14,5000.00. The checks were deposited into JF's bank account. CDP stopped making the payments in December 1997. The balance due under the Agreement is $33,208.04.

Neither Friskney nor Debtor was aware of any funds, other than those received from CDP, being deposited into JF's bank account. The majority of the funds which were deposited into JF's bank account were used to pay personal expenses of Friskney and Debtor including invoices for credit cards used by both Friskney and Debtor.

During June 1998, Debtor and Friskney separated. During 1998, they filed for divorce in the Circuit Court, Seventh Judicial Circuit, Volusia County.

On October 19, 1998, debtor filed her Chapter 7 bankruptcy petition. (Doc. 1.) Plaintiff was appointed as trustee. Debtor did not list her stock in JF on her bankruptcy schedules. Debtor did not inform the trustee of the existence of JF or the money owed JF by CDP.

On June 2, 1999 Debtor and Friskney entered into a Mediation Settlement Agreement (the "Settlement Agreement"). (Pl.'s Ex. 5.) Paragraph 7 of the Settlement Agreement states *"COLUMBIA DATA PRODUCTS, INC.:* The parties agree that the debt owed by Columbia Data Products, Inc. to the husband individually and to J.F. of Deltona, Inc. is the Husband's special equity and the Wife has no interest therein." Debtor testified that Friskney refused to sign the Settlement Agreement without the inclusion of paragraph 7. Debtor also testified that Friskney told her that if she signed the Settlement agreement, he would not say

anything to the Trustee about it. On June 18, 1999 the Circuit Court, Seventh Judicial Circuit, Volusia County entered a Final Judgment of Dissolution of Marriage.

On June 3, 1999, Debtor's Chapter 7 case was closed.

Sometime between October 20 and October 24, 2000 Plaintiff was informed by Ed CDP's attorney, that CDP owed $33,228.04 under the Agreement and was prepared to make the payment. This was the first time Plaintiff became aware of JF, the Agreement, or that any amount was owed by CDP. Plaintiff determined that he believed the $33,228.04 was property of the bankruptcy estate to be turned over to him for administration. On October 27, 2000 the trustee filed Motion to Re–Open Case. (Doc. 20). The case was re-opened on October 30, 2000.

On January 9, 2001 the trustee filed a complaint against Friskney and CDP pursuant to § 542 seeking turnover of the $33,228.04 as property of the estate and to avoid, under § 549, the post-petition transfer, if one occurred, of the bankruptcy estate's interest in JF and the money owed by CDP. Friskney filed an answer claiming that he is entitled to the funds owed by CDP. CDP is willing to pay $33,228.04 to whomever the Court determines is entitled to the funds.

## CONCLUSIONS OF LAW

■ Plaintiff argues that the money payable to JF is property of the bankruptcy estate. Friskney argues that the money payable is not property of the bankruptcy estate because he and Debtor formed JF for the sole purpose of collecting the debt owed him by CDP, and that JF held the property in trust for Friskney.

Property of the estate is defined broadly to include all legal or equitable interests of

a debtor in property as of the commencement of a case.

11 U.S.C. § 541 states in pertinent part:

(a) The commencement of a case under §§ 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Section 541 includes all kinds of property including tangible or intangible property. House Report No. 95–595, 95th Cong., 1st Sess. 367–8 (1997), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6323; Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868.

█ Courts have held that the primary asset of a closely held corporation owned by the debtor is property of the bankruptcy estate. *See In re Hill,* 265 B.R. 296, 300 (Bankr.M.D.Fla.2001)(the sole asset of a closely held corporation owned by the debtor was property of the estate such that the post petition transfer of the asset was avoidable pursuant to 11 U.S.C. § 549); *In re Hollingsworth,* 224 B.R. 822, 829 (Bankr.M.D.Fla.1998)(airplane which was owned by debtor's corporation and not by debtor himself was considered to be property of the debtor for purposes of denying debtor's discharge under 11 U.S.C. § 727(a)(2)); *In re Benjamin,* 210 B.R. 203, 209 (Bankr.M.D.Fla.1997)(for purposes of fraudulent transfer claim, used car lots transferred by Chapter 7 debtor's car lot business to debtor's non-filing spouse's corporation were property of the debtor because the debtor was president and 25% stockholder of the corporation that owned and controlled the car lot busi-

ness); *In re Beshears,* 196 B.R. 464, 467 (Bankr.E.D.Ark.1996)(real property owned by a closely held corporation ·in which debtor owned 50% of the stock was property of the estate, such that the post-petition transfer of the property was avoidable pursuant to 11 U.S.C. § 549). The Court agrees that ordinarily the stock of a debtor's closely owned corporation (and consequently the value of its assets), after payment of the corporation's debts, is property of a debtor's bankruptcy estate. However, the Court finds that the money payable by CDP to JF is not an asset of JF. As evidenced by the Agreement, the payment from CDP to JF was for: 1) the repayment of a loan from Friskney to CDP, 2) payment of computer equipment transferred by Friskney to CDP, and 3) remuneration for Friskney's services to CDP. JF never provided services for CDP. Additionally, with the exception of two payments which were made directly to Friskney, all of the payments were payable to JF in care of Friskney. Finally, Plaintiff offered no evidence such as corporate tax returns or a corporate balance sheet identifying the receivable as an asset of JF. It is clear that the receivable is Friskney's asset and was directed to be paid to JF for collection purposes only. Because the money payable is not an asset of JF, it is not property of Debtor's bankruptcy estate.

Plaintiff argues that there is no equitable reason for the remaining balance under the Agreement to go to Friskney because Friskney directed the payments to be made to JF rather than him individually in order to avoid income taxes. Additionally, Plaintiff points out that Friskney insisted on the provision in the Settlement Agreement that Debtor had no interest in the money owed by CDP to JF. Finally, Plaintiff contends that some of the credit card debt listed on Debtor's bankruptcy sched-

ules represents joint purchases. The Court does not find these arguments compelling. Because the Court will direct the payments to be paid to Friskney individually, Friskney will not avoid income taxes. Friskney's insistence on the provision in the Settlement Agreement goes to the issue of whether there was a post-petition transfer of property of the estate. Because the Court finds that the money payable by CDP under the Agreement is not an asset of JF and therefore not property of Debtor's bankruptcy estate, the provision in the Settlement Agreement is irrelevant. Finally, the Court's finding that the money payable by CDP is not property of Debtor's bankruptcy estate does not discharge Friskney of any joint credit card obligations.

Having found that the money payable from CDP to JF is not property of Debtor's bankruptcy estate, the Court need not address the issue of whether there was a post-petition transfer of property of the estate.

### CONCLUSION

The money payable from CDP to JF is not an asset of JF and is not property of Debtor's bankruptcy estate. The Court will enter a separate order directing CDP to pay the remaining balance due under the Agreement to Friskney.