In re Donald W. LORT, Debtor.

Ferguson Enterprises, Inc., Plaintiff,

v.

Donald W. Lort, Debtor.

Bankruptcy No. 04–12667–3P3.
Adversary No. 05–00098.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 27, 2006.

Robert H. Zipperer, Daytona Beach, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This Proceeding is before the Court upon the Complaint filed by Ferguson Enterprises, Inc. seeking Denial of Discharge and Exception to Discharge. After a hearing held on October 27, 2005, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On December 7, 2004, Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code.

2. Premier Plumbing ("Premier") began its business operation in the year 2000. Defendant was the sole officer, director and corporate shareholder of Premier.

3. In 2002, Premier opened a credit line of approximately $100,000 with Plaintiff. Plaintiff is a supplier of plumbing materials and fixtures. On November 6, 2002, Defendant personally guaranteed payment of Premier's debt to Plaintiff. [ P Ex. 50, Tr. at 17]

4. From November 2002 to March 2004, Defendant and Premier ordered and received supplies from Plaintiff. [Tr. at 62, 65]

5. By the end of February, 2004, Defendant and Premier owed the Plaintiff over $103,714.24. [Tr. at 58]

6. Premier typically kept at least $30,000 of cash in its bank account in order to pay its suppliers. [Tr. at 44–45] By the end of April of 2004, the balance of Premier's bank account was only $1,954.06. [Tr. at 46]

8. Between February and March of 2004, Defendant caused sums totaling $66,100 to be paid from Premier's bank account to his relatives, former wives and girlfriend. The distribution of these payments is as follows: (1) a payment of $48,500 to his father on March 23, 2004, (2) a payment of $7,500 to his niece on March 9, 2004, (3) payment to his sister for $5,400 on March 8, 2004, (4) payment to his girlfriend, Leia Smith, in the amount of $3,000 on February 20, 2004, (5) payment to his former wife, Cynthia Lort, in the amount of $450 on February 9, 2004 and payment to his former wife, Christine Lort, in the amount of $1,250 on February 6, 2004. [P Ex. 25, 43, 22, 51, 52, 53]

9. Defendant testified that the $48,500 payment to his father was made to repay a $45,000 loan his father had made to the company. [Tr. at 35–37] Defendant also testified that the loan was not made as a single payment but as several large cash payments over a span of time. [Tr. at 37–38] Defendant could not recall the specific amounts of the individual payments or the dates the cash payments were made. [Tr at 37–38] Defendant was unable to produce any records, deposits or receipts in support of his claim that the cash payments were made to Premier. Also, Defendant could not even recall whether the promissory note was executed before the first payment was made or subsequent to that. [Tr. at 37]

10. Defendant testified that the payments made to his former wives, Christine and Cynthia Lort, were not business related. [Tr. at 26–27] Although Defendant testified that he had reimbursed the corporation for the payments made to his former wives, he was unable to produce any receipts in support of this assertion. [Tr. at 27]

11. Defendant testified that the $3,000 paid to his girlfriend, Leia Smith, was for work she did for his business and not as payment for the personal jobs she did for him, which included watching his daughter and maintaining his house. [Tr. at 24–25] However, Defendant admitted that he did not have a detailed understanding of what Ms. Smith did in order to earn the $3,000 and that he never gave her a W–2 or 1099. [Tr. at 25]

12. Defendant testified that the $5,400 check he wrote to his sister was for work she performed for the business. [Tr. At 32] No receipts or invoices for what services his sister performed for the company were produced. [Tr. At 32]

13. Defendant testified that the $7,500 check to his niece, Sandy Hill, was for work she performed for the business, which included cleaning houses and laying sod. [Tr. At 32]

14. Premier's business effectively ended in March of 2004, when the company's master plumber left.

15. From January of 2004 to March of 2004, Plaintiff made numerous attempts to collect the debt it was owed from the Defendant and Premier Plumbing. [Tr. at 58–59]

### CONCLUSION OF LAW

Plaintiff asserts the Defendant's discharge should be denied pursuant to 11 U.S.C. § § 727(a)(2) and (a)(5) and an exception to discharge pursuant to § 523.

### 11 U.S.C. § 727

██ 11 U.S.C. § 727 provides various grounds for denial of a discharge. Actions to deny a debtor's discharge pursuant to § 727 must be construed strictly against a creditor and liberally in favor of the debtor. *In re Jacobs,* 243 B.R. 836, 842 (Bankr.M.D.Fla.2000). Therefore, a creditor must prove that a debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the right to a discharge in bankruptcy has limitations. *Id.* Once a plaintiff meets its initial burden, the ultimate burden of persuasion rests with the defendant. *In re Wilbur,* 211 B.R. 98, 101 (Bankr. M.D.Fla.1997).

### 11 U.S.C. Section 727(a)(2)(A)

██ This Court has previously held that *11 U.S.C. § 727(a)(2)(A)* requires the objecting party to show that: (1) a transfer occurred; (2) the property transferred was property of the debtor; (3) the transfer was within one year of the petition; and (4) at the time of the transfer the debtor possessed the intent to hinder, delay or defraud the creditor. *Grant v. Benjamin,* 210 B.R. 203, 208 (Bankr.M.D.Fla. 1997).

#### a. *Transfer occurred*

It is undisputed that all the relevant transfers occurred.

#### b. *Transferred property was property of the debtor*

Defendant asserts that *§ 727(a)(2)(A)* is not grounds upon which his discharge can be denied as the allegations and evidence all relate to transfers of the property of Defendant's business, Premier Plumbing, and that there is no proof that Premier was an alter-ego of the Defendant. However, Plaintiff asserts that since the Defendant was the sole officer, director and corporate shareholder of Premier that the property transferred is property of the Debtor.

This Court has previously ruled that used car lots transferred by a debtor-husband's car lot business to his non-debtor wife's company, were to be considered property of the debtor's estate since the debtor was president and 25% stockholder of the company that controlled the car lot business. *Benjamin,* 210 B.R. at 209. In the instant case, Defendant was the sole officer, director and corporate shareholder of Premier. Thus, in accordance with the reasoning this Court applied to reach its holding in *Benjamin,* the Court finds the property transferred in the instant case was property of the Defendant's bankruptcy estate.

#### c. *The transfer was within one year of the petition date*

As all the relevant transfers occurred between February and March of 2004, and Defendant filed his Chapter 7 petition in bankruptcy on December 7, 2004, the transfers clearly occurred within one year of the petition date.

#### d. *At the time of the transfer, the debtor possessed the requisite intent to hinder, delay or defraud a creditor*

██ A showing of actual, not constructive intent satisfies the fourth ele-

ment. *Id.* "Intent can be ascertained from the totality of the circumstances." *Id.* The "badges of fraud" this Court has previously applied to determine intent include:

1. The lack or adequacy of consideration;

2. The family, friendship or close association between the parties;

3. The retention of possession, benefit or use of the property in question;

4. The financial condition of the party sought to be charged both before and after the transaction in question;

5. The existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, on set of financial difficulties, or pendency or threat of suits by a creditor; and

6. The general chronology of the events and transaction under inquiry.

*Clark v. Allen,* 210 B.R. 861, 867, (Bankr. M.D.Fla.1997).

As the Court will discuss below, the evidence proffered by Plaintiff supports an inference that the Defendant made the relevant transfers with the intent to hinder, delay, and defraud creditors.

The circumstances of the transfers between Premier and Defendant's relatives, former wives and girlfriend give rise to an inference of fraudulent intent. The Court finds several badges of fraud present. First, the issue of consideration is clearly a cause for concern in the instant case. For instance, the transfers Defendant caused to be made to his former wives were admittedly for personal obligations and there is no documentary evidence to suggest these transfers were ever repaid. [Tr. at 27] As to the transfer made to Defendant's girlfriend, it is unclear from the record and evidence presented what duties Ms. Smith performed for the business to earn the $3,000, or if the money was in actuality

paid to Ms. Smith for the personal jobs she did for the Defendant. Defendant was also unable to produce any receipts or invoices for the work his sister allegedly performed for the business. [Tr. at 32] Most troubling to the Court though, is the $48,500 transfer to Defendant's father, to repay a loan that his father had supposedly made to Premier. However, there are no records, deposit slips or receipts to collaborate the assertion that this money was ever even originally loaned by Defendant's father to the company. Also, Defendant could not even recall whether the promissory note was executed before the first payment was made or subsequent to that. [Tr. at 37] As to a second badge of fraud, all the relevant transfers were made to individuals who have close ties to the Defendant. These individuals include; Defendant's father, former wives, sister, niece and girlfriend. However, there is no documentary evidence to show that Defendant retained possession, benefit or use of the property. Third, it is unquestioned that Defendant's business, whom he was the sole shareholder of, was experiencing serious financial difficulties during the time period in question. Further, the Defendant had personally guaranteed payment on Premier's debt. Fourth, during the time period the transfers occurred, the Creditor was actively pursuing the Defendant to receive repayment of the debt owed. [Tr. at 58–59] Finally, the general chronology of the events involved shows that the transfers were made during a tumultuous time period for the Defendant and his business.

Looking at the totality of the circumstances, the Court finds Plaintiff satisfied its burden of producing enough evidence to support an inference that the transfers the Defendant made were with the intent to defraud creditors. Additionally, the Court finds the Defendant failed to proffer credible evidence to rebut Plaintiff's prima facie

case for denial of discharge. Defendant's testimony was extremely vague and unsubstantiated. Defendant failed to produce any credible documentation to support his assertion that the $48,500 transferred to his father was for repayment of a loan. Although, Defendant did produce a promissory note the Court does not find the note to be genuine. It is very brazen of the Defendant to expect this Court to believe that there were large cash payments of up to $8,000 to $10,000 at a time, for which there is not even a trace. Likewise, Defendant was also unable to produce any type of evidence whatsoever to support his assertion that he paid the corporation back for the admittedly personal transfers to his former wives. It is also likely, based upon the lack of evidence, that Defendant's girlfriend and sister never even legitimately worked for Premier. On the whole, Defendant's testimony is not even remotely believable and to allow the Defendant to succeed with making such unsubstantiated assertions would be an abuse of the bankruptcy system and equity clearly would not be served. Based upon the above, Defendant's discharge will be denied pursuant to *11 U.S.C. § 727(a)(2)(A)*.

**11 U.S.C. § 727(a)(5)**

*11 U.S.C. § 727(a)(5)* provides in relevant part:

(a) The court shall grant the debtor a discharge, unless-

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets of deficiency of assets to meet the debtor's liabilities.

*11 U.S.C. § 727(a)(5)*

 "Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984). Plaintiff asserts that

Defendant failed to satisfactorily explain the loss of Premier's assets. Defendant argues that although the assets of Premier were liquidated that no inexplicable loss has been proven.

 The Court finds Plaintiff's argument pursuant to *§ 727(a)(5)* to be misplaced. Although the transfers Defendant made were with the intent to hinder, delay or defraud his creditors, the documentary evidence is clear as to whom Defendant caused Premier's assets to be transferred to. It is the purpose behind those transfers that is problematic. Therefore, even though the transfers were made for an improper purpose it cannot be said that there has been an unsatisfactory explanation as to where the assets, at least initially, went. Thus, the Court finds the Plaintiff has not met its burden of proving that Defendant's discharge should be denied under § 727(a)(5).

**11 U.S.C. § 523(a)(4)**

As the Court has already found that the Defendant's discharge will be denied pursuant to 11 U.S.C. § 727(a)(2)(A), it is unnecessary for the Court to determine whether Defendant's debt to Plaintiff should be excepted from a nonexistent discharge.

### CONCLUSION

Defendant's discharge will be denied pursuant to 11 U.S.C. § 727(a)(2)(A). The Court will enter a separate order that is consistent with these Findings of Fact and Conclusions of Law.