In re Thomas L. MORAN, Debtor.

Joseph J. BERNSTEIN, Trustee of Somerset Transit, Inc., formerly Moran Trucking Corporation, Plaintiff,

v.

Thomas L. MORAN, Defendant.

Bankruptcy No. 88–160–BKC–6P7.
Adv. No. 88–328.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Oct. 30, 1989.

Charles E. Bobinis, Pittsburgh, Pa., for plaintiff.

David R. McFarlin, Orlando, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon complaint of Joseph J. Bernstein, as trustee of Somerset Transit, Inc., against Thomas L. Moran for fraud or defalcation while acting as a fiduciary, pursuant to 11 U.S.C. § 523(a)(4). A trial was held on August 17, 1989, and upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. During 1978, Moran Trucking Corporation ("MTC") was incorporated under the laws of the state of Pennsylvania. The defendant served as the sole shareholder and principal officer of MTC until a transfer of control took place in June, 1982.

2. During 1979, MTC engaged Burgess Freeman ("Freeman") as its accountant/vice president.

3. On December 28, 1981, the defendant entered into an exclusive hauling contract with Marmon Coal Company ("Marmon hauling contract"). Pursuant to the contract, the defendant held the exclusive right to provide coal hauling services for Marmon. The contract was serviced by MTC and accounted in 1982 for approximately 80% of the MTC annual revenues.

4. Included in the assets of MTC were various pieces of equipment that were financed by Tricontinental Leasing, Inc. ("Tricontinental"). The defendant personally guaranteed the Tricontinental obligation.

5. On June 4, 1982, the defendant resigned as president/director of MTC.

Thereafter, Freeman assumed the presidency and caused the name of MTC to be changed to Somerset Transit, Inc. ("Somerset Transit"). For clarity the Court will continue to use "MTC" notwithstanding the name change to "Somerset."

6. The series of agreements by which the defendant turned over control of MTC to Freeman are summarized as follows:

   a. On June 4, 1982, Freeman entered into a option agreement with the defendant to purchase 52% of the defendant's equity interest in MTC for $10,000.00, which was paid by Freeman between June 4, 1982, and August 27, 1982.

   b. On June 4, 1982, Freeman and the defendant entered into a memorandum of understanding regarding the complete termination of the defendant's interest in MTC upon the following terms:

   i. Freeman, as president/director and controlling shareholder was to direct MTC to redeem the defendant's remaining 48% interest in MTC.

   ii. The defendant was to be paid $250.00 for assignment of his rights in his Pennsylvania public utility commission license.

   iii. As severance pay, MTC was to pay the defendant $5,000.00 per month for 6 months.

   c. On October 10, 1982, MTC and the defendant entered into an agreement to revise and restate the previous memorandum of understanding. The defendant assigned all of his right, title, and interest to the Marmon hauling contract to MTC in consideration of 2.5% of the gross receipts from January 1, 1982, through December, 1986. MTC further agreed to pay and indemnify the defendant from the Tricontinental obligation and all personal guarantees.

7. In July, 1982, the defendant changed his residence and domicile from Pennsylvania to Florida.

8. In January, 1983, Marmon sharply curtailed its operations significantly reducing the revenues of MTC.

9. On April 11, 1983, MTC filed for protection under Chapter 11 in the United

States Bankruptcy Court for the Western District of Pennsylvania.

10. MTC resumed hauling for Marmon from June, 1983, through June, 1984, when Marmon announced a permanent closing of its operations.

11. In June, 1984, Freeman cause MTC to enter into an agreement with Esquire Trucking, Inc. ("Esquire") pursuant to which MTC leased equipment to Esquire for the operation of the hauling business. The defendant had no connection to Esquire as an officer, director, shareholder, employee, agent or otherwise.

12. On January 22, 1985, MTC's case was converted from Chapter 11 to Chapter 7.

13. Between April, 1982, and April, 1984, the defendant received from MTC $124,845.83 and $7,700.00 from Esquire during 1983.

14. Between March, 1982, and December, 1982, MTC paid Tricontinental $24,684.50 on behalf of the defendant.

15. During 1983, Esquire made monthly contract payments to Tricontinental.

16. All payments received by the defendant were pursuant to the assignment and memorandum of understanding.

## CONCLUSIONS OF LAW

The plaintiff seeks exception to discharge pursuant to 11 U.S.C. § 523(a)(4), which provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

The evidence presented in this case raises two primary issues: (i) whether the plaintiff has proven fraud by clear and convincing evidence; and (ii) whether the defendant was acting in a fiduciary capacity.

*Burden of Proof*

In determining whether a particular debt falls within one of the exceptions to discharge set forth in § 523 of the Bankruptcy Code, the statute must be strictly construed against the objector and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy scheme. 3 *Collier on Bankruptcy*, para. 523.05A (1989). See, *In re Cramer*, 93 B.R. 764, 768 (Bankr.M.D.Fla. 1988).

The philosophy of the bankruptcy law traditionally has been that the discharge provisions shall be liberally construed in favor of the debtor in order to achieve the Congressional intent, which was to give a financially oppressed debtor a fresh start in life. *Matter of Hyers*, 70 B.R. 764, 769 (Bankr.M.D.Fla.1987). See also, *In re Beckett*, 96 B.R. 366, 368 (Bankr.M.D.Fla. 1989); *Matter of Cross*, 666 F.2d 873 (5th Cir.1982).

There is no question that a party seeking to except a debt from discharge must prove all elements of the exception by clear and convincing evidence. *Chrysler Credit Corporation v. Rebhan*, 842 F.2d 1257 (11th Cir.1988).

In *Hyers*, supra, the court held that:
It is clear that the burden is on the creditor to prove any exception to the discharge. (Citations omitted) It is equally that the standard of proof imposed on the creditor is that of clear and convincing evidence.
*Id.* at 769.

Under the Bankruptcy Code, for the Court to except a debt from discharge based on fraud, larceny, or embezzlement, there must exist an element of moral turpitude or intentional wrong. *In re Fontenot*, 89 B.R. 575, 582 (Bankr.W.D.La.1988); *see also, Neal v. Clark*, 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1877).

The plaintiff directs his allegations of "fraud," "malfeasance," and "conspiracy" at various payments which the defendant received pursuant to the sale agreement and assignment. The payments

received by the defendant were not obtained through any misrepresentation, falsehood, trickery or deceit. Indeed, all payments were carefully documented in the books and records of MTC.

All payments to the defendant represented severance pay and royalties in connection with the assignment of the Marmon hauling contract. All payments by MTC to Tricontinental were made pursuant to an equipment financing arrangement which had been personally guaranteed by the defendant. MTC continued to use the financed equipment and had agreed to indemnify the defendant from the claim of Tricontinental. Esquire made payments to Tricontinental and the defendant as Esquire leased and operated equipment.

Moreover, even assuming arguendo that the defendant had no right to retain the payments, wrongful detention of the payments would not convert such receipt into "positive fraud, essential to the creation of a debt to avoid the effect of a discharge in bankruptcy." *Western Union Cold Storage Co. v. Hurd,* 116 F. 442 (1902).

Although the term "defalcation" may be a broader word than fraud, embezzlement, or larceny, "[a] defalcation clearly requires acts amounting to misconduct or reflecting bad faith, and not merely inadvertence, mistake or negligence...." *Kadish v. Phoenix Scottsdale Sports Co.,* 11 Ariz. App. 575, 466 P.2d 794 (1970); see *In re Gonzales,* 22 B.R. 58 (9th Cir.B.A.P.1982).

To create a non-dischargeable debt, defalcation must be accompanied by a fiduciary capacity of the debtor/defendant. *In re Johnson,* 691 F.2d 249, 254–255 (6th Cir.1982).

### Fiduciary Capacity

The qualification that the debtor/defendant be acting in a fiduciary capacity has consistently been limited in its application to what may be described as a technical or express trust, and not to trusts ex maleficio that are imposed because of the very act of wrongdoing out of which the contested debt arose. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Matter of Angelle,* 610 F.2d 1335

(5th Cir.1980); *In re Kelley,* 84 B.R. 225 (Bankr.M.D.Fla.1988); *Matter of Campbell,* 79 B.R. 496 (Bankr.M.D.Fla.1986); *In re Wing,* 96 B.R. 369 (Bankr.M.D.Fla.1989); *In re Nayee,* 99 B.R. 90 (Bankr.M.D.Fla. 1989); *In re Hyers,* 70 B.R. 764 (Bankr.M. D.Fla.1987).

In *In re Nayee, supra,* a creditor sought exception to discharge against a corporate officer who had issued an insufficient funds check on behalf of the corporation. The Court held that a corporate officer's obligation to act in a responsible manner toward creditors of the corporation does not rise to the level of a "fiduciary" duty within the meaning of § 523(a)(4).

In *In re Wing, supra,* a creditor sought exception under § 523(a)(4) against a former director for alleged fraud and self-dealing. The court noted that Florida law recognizes that a director of a corporation owes a fiduciary duty to the corporation and to the stockholders and must act in good faith and in the best interest of the corporation. (citing, *Tillis v. United Parts, Inc.,* 395 So.2d 618 (Fla. 5th DCA 1981)). Nevertheless, the court concluded that there is no express or technical trust created between the director and the corporation's creditors for purposes of § 523(a)(4). *Wing* at 374.

In *Matter of Campbell, supra,* a title insurance company sought exception to discharge under the section in question, against a debtor/closing agent who collected title insurance premiums, but failed to turn the premiums over. The title company was unable to point to an agreement or statute creating a trust as to the premiums collected. Thus, the court held that the creditor failed to demonstrate that the debtor was acting in a fiduciary capacity to support a charge under § 523(a)(4).

### Conclusion

In the case *sub judice,* the plaintiff fails to prove its case for fraud through clear and convincing evidence, or that the defendant was acting in a fiduciary capacity for the purposes of § 523(a)(4). The Court will

find the debt is covered by the bankruptcy discharge.

A separate judgment shall be entered consistent with these Findings of Fact and Conclusions of Law.