**In re Dudley D. ALLEN, Debtor.**

**Hanley C. CLARK, Commissioner of Insurance for the State of West Virginia, in his Official Capacity as Receiver of George Washington Life Insurance Company, Plaintiff,**

v.

**Dudley D. ALLEN, Defendant.**

**Bankruptcy No. 96–0565–BKC–3P7.
Adversary No. 96–276.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 9, 1997.

Raymond Magley, Jacksonville, FL, for plaintiff.

Richard Thames, Jacksonville, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon a complaint objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4)(A) and seeking an exception to discharge pursuant to 11 U.S.C. § 523(a)(4). Trial was held on February 7, 1997, April 15, 1997 and April 29, 1997. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Dudley D. Allen (Defendant) was a member of the Board of Directors of George Washington Life Insurance Company (GW) from 1982 to 1991. (Adv.Rec.17). Defendant performed attorney services for GW on its individual health and life insurance claims. (*Id.*).

2. On June 3, 1991, the Circuit Court of Kanawha County of West Virginia entered an Order appointing the Insurance Commis-

sioner of the State of West Virginia, Hanley C. Clark (Plaintiff), Receiver and Liquidator of GW. (Adv. Rec. 17, Ex. 1).

3. On September 3, 1992, Plaintiff sued Defendant and other former directors of GW. (Adv.Rec.17). On July 29, 1993, Plaintiff filed an amended complaint, alleging, *inter alia*, that Defendant breached his fiduciary duties to GW (Count III), and committed professional negligence (Count IV). (Adv. Rec.17, Ex.2). A two-week trial was held in March and April 1995. (Adv.Rec.17). The Verdict Form framed the issues under Counts III and IV in the following format for the jury to decide:

Count III: Do you find by a preponderance of the evidence that any of the Defendants breached their fiduciary duty to George Washington Life Insurance Company ("GW Life") by failing to exercise utmost good faith and loyalty in their dealings with GW Life?

Count IV: Do you find by a preponderance of the evidence that any of the Defendants deviated from the appropriate standard of care or were negligent in the performance of their professional services as attorneys for GW Life?

(Adv.Rec.25, Ex. A).

4. On Count III, the West Virginia District Court instructed the jurors as follows: "If you find that the defendants, as officers and directors, did not act in good faith and loyalty in their dealings with G.W. Life, then you may find that they breached their fiduciary duty." (Adv. Rec. 17, Ex. 3, at 1984). The jurors were also told that: "The director's duty of good faith forbids placing himself in the position where his individual interest clashes with his duty to the corporation." (*Id.*).

5. On Count IV, the jurors were instructed to find that Defendant committed professional malpractice or negligence if: (i) Defendant did not perform services as an attorney for GW at the level required by the standard of care; (ii) Defendant violated any ethical rules that define the minimum level of professional conduct required by attorneys to

their clients; or (iii) Defendant's law partner was negligent in his performance of his duties to the corporation. (*Id.* at 1989–91).

6. The jury found Defendant liable on Counts III and IV and apportioned his fault at ten percent (10%). (Adv.Rec.25, Ex. A). On April 10, 1995, the jury entered a verdict and awarded $4,629,188 in damages on Count III, and $8,986,070 in damages on Count IV, totalling $13,615,258. (*Id.*). On July 7, 1995, the West Virginia District Court reduced the total award of damages to $6,198,591.34, and entered a Final Judgment Order accordingly. (Adv.Rec.17, Ex.6). Although Defendant was found ten percent at fault on both the breach of fiduciary duty and professional negligence counts, he was held jointly and severally liable for the full amount of the judgment. (*Id.* at 6).

7. On September 26, 1995, the West Virginia District Court's judgment was registered in the United States District Court of the Middle District of Florida. (Main Case Doc. 38).

8. On November 16, 1995, the Plaintiff moved the West Virginia District Court to order Defendant to liquidate and distribute a Merrill Lynch IRA valued at $2,778.87, and a Mass Mutual Variable Annuity Contract ("Mass Mutual IRA") held in Defendant's Individual Retirement Account valued at $142,068.74. (Main Case Doc. 38). On January 11, 1996, the West Virginia District Court granted the Motion. (*Id.*).

9. On February 1, 1996, Defendant filed his petition for relief under Chapter 7 of the Bankruptcy Code. (Main Case Doc. 1).

10. On March 21, 1996, Plaintiff filed an objection to Defendant's claim of exemptions, and on June 3, 1996, objected to Defendant's Amended claim of exemptions. (Main Case Docs. 11,18). The grounds of Plaintiff's objections were fraudulent conversion, certain funds were not property of the estate, and certain properties were not exempt (Main Case Doc. 37). Plaintiff also objected to the Mass Mutual IRA and the Merrill Lynch IRA on the additional ground that the West Virginia District Court ordered the Defendant to liquidate the IRAs and turn over the cash proceeds to Plaintiff; therefore, the IRAs were not property of the estate. (Main Case Doc. 11).

11. This Court held a hearing on Plaintiff's objection to Defendant's claim of exemptions on July 18 and 19, 1996, and subsequently ruled, *inter alia,* that the Mass Mutual IRA was exempt under Florida Statute § 222.14. (Def.'s Ex. 46–47; *In re Allen,* 203 B.R. 786 (Bankr.M.D.Fla.1996)).

12. On May 7, 1996, Plaintiff filed this proceeding objecting to Defendant's discharge and to determine dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(4) and 727(a)(2)(A). (Adv.Rec.1). On October 3, 1996, the Court allowed Plaintiff to amend his complaint, adding Counts III and IV pursuant to 11 U.S.C. §§ 727(a)(2)(B) and (a)(4) respectively. (Adv.Rec.21).

13. Count I of the Amended Complaint alleges that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A) because he transferred property to his wife within a year of filing his petition with the intent to delay and defraud his creditors.

14. Count II of the Amended Complaint alleges that the West Virginia District Court Final Judgment in the amount of $6,189,591.34 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) on the basis of collateral estoppel. Plaintiff and Defendant moved for summary judgment on Count II of the complaint. A hearing was held on November 13, 1996, and the Court denied both Motions for Summary Judgment. (Adv.Rec.35–36).

15. Count III of the Amended Complaint alleges that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B) because he transferred property after the filing of the petition with the intent to delay and defraud his creditor.

16. Count IV of the Amended complaint alleges that pursuant to 11 U.S.C. § 727(a)(4)(A) Defendant knowingly and fraudulently failed to list his interest in a contingency fee agreement on Schedule B of his bankruptcy petition.

17. Trial was held or February 7, 1997, April 15, 1997 and April 29, 1997.

### The Mass Mutual Variable Annuity IRA Contract

18. Defendant is the annuitant, insured, owner and payee of the Mass Mutual IRA. (Def.'s Ex. 41). Defendant's wife, Lenorah J. Allen (Mrs. Allen) is the primary beneficiary. (*Id.*). On November 19, 1995, while preparing for the hearing on Plaintiff's Motion for Turnover of the Merrill Lynch and Mass Mutual IRAs to be heard before the United States District Court in West Virginia, Defendant discovered that the original annuity contract had to be surrendered in order for Mrs. Allen to collect the death benefits provided in the contract. (Tr. 25–34).

19. That evening, Defendant gave an envelope to Mrs. Allen with the Mass Mutual IRA enclosed and asked her place it in the safety deposit box. (*Id.*). Mrs. Allen complied. (*Id.*). Defendant later argued before the West Virginia District Court that his wife has a possessory lien in the Mass Mutual IRA and could not be compelled to turn it over. (*Id.*). At this trial, Mrs. Allen testified that she would only turn over the IRA to Defendant under dire circumstances. (Tr. 169). Mrs. Allen states that the purpose of the IRA is to educate the couple's son. (*Id.*).

### Dudley D. Allen, P.A. Shares of Stock

20. From 1982 to 1995, Defendant was a partner with Wilbur & Allen, P.A. (Tr.36). On March 24, 1995, the law firm of Dudley D. Allen, P.A., was formed. (Tr. 36). Currently, the law firms of John H. Wilbur, P.A. and Dudley D. Allen, P.A. are partners. (Tr. 38). When asked why separate law firms were established, Defendant responded that it was something he and his former partner, John H. Wilbur, wanted to do for a long time and recently had the opportunity to do so. (Tr. 250–51). Defendant assured the Court that his law firm was not established to affect the Plaintiff's claim or lawsuit because the Plaintiff has a claim against Defendant, not the firm. (*Id.*).

21. On January 2, 1986, Wilbur & Allen, P.A. sold their office furniture to Mrs. Allen. (Def.'s Ex. 1). The lease term was for four years, and Wilbur & Allen, P.A. was the primary obligor. (*Id.*) She sold, discarded, and leased back some of the furniture to the

law firm. (Tr. 159). On April 24, 1995, Wilbur & Allen, P.A. sold its law books to Mrs. Allen, and then leased them back from her. (Def.'s Ex. 9, 13). The equipment lease was amended and renewed on June 13, 1994, and on June 26, 1996. (Def.'s Ex. 7–8; Tr. 38–39)

22. On December 11, 1995, Mrs. Allen and Defendant entered into an agreement entitled "Assumption of Leases Obligations by P.A., Guaranty of Performance by Shareholder, Pledge of stock by Shareholder." (Def.'s Ex. 14). Pursuant to this agreement, Mrs. Allen gave the Dudley D. Allen, P.A. permission to use the equipment, furniture and library books which she was leasing to Wilbur & Allen. (*Id.*). Dudley D. Allen, P.A. in turn agreed to pay and perform all obligations of Wilbur & Allen under the Leases. (*Id.*). Defendant, the sole shareholder of Dudley D. Allen, P.A., then guaranteed the performance of the law firm by delivering to Mrs. Allen his stock certificate for 100 shares of stock as security. (*Id.*). Mrs. Allen is allowed to keep the pledged stock as security for performance and guarantee until all obligations under the Leases have been fully performed. (*Id.*).

### Contingency Fee Contract

23. On June 12, 1993, Williams & Miller, a law firm in Memphis, Tennessee, entered into a contingency fee contract with James T. Ray. (Pl.'s Ex. 19). James T. Ray is the Plaintiff in a personal injury action against CSX Transportation, Inc., a Jacksonville corporation. (Tr. 60).

24. Williams & Miller, in turn, retained Defendant as local counsel. (Pl.'s Ex. 19). At this time, Defendant was a partner with Wilbur & Allen, P.A., but the Wilbur & Allen, P.A.'s name was not printed on the contract, (*Id.*; Tr. 80–81).

25. The terms of the contingency fee contract was that Williams & Miller would receive thirty-three and one-third percent (33⅓ %) of the award recovered for the client, and Defendant receives one-third (⅓) of the amount Williams & Miller receives. (Tr. 60–61).

26. On November 9, 1995, James T. Ray terminated Williams & Miller's services, and hired a new firm to represent him in his suit against CSX. (Def.'s Ex. 20). The new law firm is Blalock, Blalock & Oros, P.C. (Blalock), a law firm located in Birmingham, Alabama. (Def.'s Ex 21). Defendant, on behalf of Dudley D. Allen, P.A., was rehired and continued as local counsel with Blalock, and adopted the same fee arrangement as with Williams & Miller. (Def's Ex. 24; Pl.'s Ex. 26). On February 2, 1996, Defendant, on Dudley D. Allen, P.A.'s behalf, signed an employment contract with James T. Ray, which was forward to him by the Blalock firm. (Def.'s Ex. 25).

27. On March 3, 1997, the Circuit Court in Duval County held a trial in the case of James T. Ray v. CSX transportation. (Tr. 140). Before, the jury rendered its verdict, the parties settled the case for a reported $590,000. (Tr. 140–41). Pursuant to the contingency fee contract with Blalock, Dudley D. Allen, P.A. is entitled to receive approximately $64,900. (Tr. 141).

28. Defendant did not list this fee agreement with Blalock and James T. Ray on Schedule B of his bankruptcy petition. (Def.'s Ex. 26). Defendant explained that he did not list this information on his schedule because he has no personal interest in the agreement. (Tr. 80). He further explained that Wilbur & Allen, P.A. initially had an interest in the fee agreement, and Dudley D. Allen, P.A. later has an interest in that fee agreement; however, Defendant at no time held an interest in the contingency fee contract individually. (Tr. 81). Also, Wilbur & Allen, P.A. advanced all the costs of the case, and any work he did was on behalf of either Wilbur & Allen, P.A. or Dudley D. Allen, P.A. (Tr. 107).

## CONCLUSIONS OF LAW

The Court must determine whether to grant to Defendant's discharge, and whether to except Plaintiff's debt from Defendant's discharge. Plaintiff contends that this Court should deny Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4)(A), which state, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless—

....

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

....

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made false oath or account[.]

11 U.S.C. §§ 727(a)(2), (4)(A) (1994).

Plaintiff also seeks an exception from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4) on the basis of collateral estoppel. Section 523(a)(4) states, in relevant part, that: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4).

From the outset, the Court notes that the discharge provisions of the Bankruptcy Code are liberally construed in favor the debtor to achieve the congressional intent of giving the honest, but unfortunate debtor a fresh start in life. *Bernstein v. Moran (In re Moran),* 107 B.R. 359, 361 (Bankr. M.D.Fla.1989). Any other construction would be inconsistent with liberal spirit of the entire bankruptcy scheme. *Id.;* The Court will address each count of the complaint accordingly.

### Count I—Section 727(a)(2)(A)

This Court has previously held that denial of a discharge under section 727(a)(2)(A) requires the objecting party to show:

1. That a transfer occurred;

2. That the property transferred was property of the debtor;

3. That the transfer was within one year of petition; and

4. That at the time of the transfer, the debtor possessed the requisite intent to hinder, delay or defraud a creditor.

*In re Milam,* 172 B.R. 371, 374 (Bankr. M.D.Fla.1994) (quoting I%*In re More,* 138 B.R. 102, 104 (Bankr.M.D.Fla.1992)). *The objector has the burden of proving by preponderance of the evidence that the four elements have been satisfied. Id.;* Fed. R. Bankr.P. 4005.

▮▮ First, is whether a transfer occurred. Plaintiff argues that two transfers occurred. First, Defendant transferred the Mass Mutual IRA to Mrs. Allen; and secondly, Defendant pledged his shares of stock in Dudley D. Allen, P.A. to Mrs. Allen. An issue exists as to whether Defendant's act of giving the envelope to Mrs. Allen to place in a safety deposit was an actual transfer. The term "transfer" is defined as "every mode, direct or indirect, absolute or conditional,voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). The legislative history of section 101(54) teaches that "any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title because possession, custody, and control are interests in property." S.Rep. No. 95–989, 95th Cong.2d Sess. 27 (1978), U.S.Code Cong & Admin. News 1978, pp. 5787, 5813. In this proceeding, Defendant admits that he gave his wife a possessory lien in the Mass Mutual IRA. (Tr. 38–40). Also, Defendant pledged his shares of stock in the law firm to his wife. (Def.Ex. 44). Therefore, the element of transfer is satisfied as to the Mass Mutual IRA and Dudley D. Allen, P.A.'s stock.

Secondly, is whether the items transferred were property of the Defendant. The record clearly shows that Defendant was the owner of the Mass Mutual IRA and the Dudley D. Allen, P.A.'s stock. (Def.'s Ex. 14, 44). Therefore, this element is also satisfied because the items claimed to be transferred are Defendant's property.

Thirdly, the transfers must have taken place within one year before the filing of the bankruptcy petition. Defendant gave Mrs. Allen the Mass Mutual IRA on November 19, 1995, approximately three months before the bankruptcy petition was filed on February 1, 1996. (Tr. 2830). Defendant pledged his shares of stock in Dudley D. Allen, P.A. to Mrs. Allen on December 11, 1995, approximately two months before the date of the filing of the petition. (Def.'s Ex. 14). Therefore, this third element is also satisfied because both transfers took place less than a year from the petition date.

▮▮ Finally, the Court examines whether, at the time of the transfers, Defendant possessed the requisite intent to hinder, delay or defraud his creditors. To satisfy the fourth element, there must be a showing of actual, not constructive, intent. *Phillips v. Nipper (In re Nipper),* 186 B.R. 284, 288 (Bankr.M.D.Fla.1995). Intent can be ascertained from the totality of the circumstances. *Id.* This Court has previously used the following "badges of fraud" to determine intent:

1. The lack or adequacy of consideration;

2. The family, friendship or close association between the parties;

3. The retention of possession, benefit or use of the property in question;

4. The financial condition of the party sought to be charged both before and after the transaction in question;

5. The existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditor; and

6. The general chronology of the events and transaction under inquiry.

*Id.* The Court will determine the intent of the Defendant at the time of each transfer by applying these indicia of fraud.

*Mass Mutual IRA*

▮ The Court concludes that Defendant did not have the requisite intent to delay,

hinder or defraud his creditors at the time he transferred the Mass Mutual IRA. Because Mrs. Allen is the primary beneficiary of the Mass Mutual IRA, the issue of consideration needed to take hold of the policy is irrelevant. As to second badge of fraud, Defendant and Mrs. Allen are husband and wife. Next, the third badge of fraud is in Defendant's favor because Mrs. Allen has possession of the IRA, and has testified that she would only return it to Defendant under dire circumstances. She also stated that the IRA is for the benefit of education the couple's son. Consequently, Defendant does not retain possession, benefit or use of the IRA. The fourth badge of fraud is in favor of Defendant because his financial condition has not improved since he surrendered the IRA to his wife. The fifth badge is in the Defendant's favor because the IRA is exempt and creditors would not have access to it, and therefore, the cumulative effect of Defendant's conduct is minimal. Finally, the general chronology of events indicates that Defendant turned over the IRA to his wife so that her interest, as the primary beneficiary, would become effective. Therefore, examining the totality of circumstances, Plaintiff has not shown that Defendant has actual intent to hinder, delay or defraud his creditors when he surrendered the IRA to his wife.

▪▪▪ Moreover, the Court is of the impression that a transfer of an otherwise exempt asset should not be the basis of denying a debtor's discharge. *See T.R. Press v. Whitcomb (In re Whitcomb )*, 140 B.R. 396, 399 (Bankr.E.D.Va.1992). One of the goals of Chapter 7 is the liquidation of *nonexempt* assets by the Chapter 7 Trustee for the benefit of the debtor's creditors. This Court has previously held that the Mass Mutual IRA is exempt under Florida Statute § 222.14. (Def.'s Ex. 46–47). Therefore, the Chapter 7 Trustee could not have obtained this IRA for the benefit of the creditors.

*Shares of Stock in Dudley Allen, P.A.*

▪▪▪ However, the Court concludes that the Defendant had the requisite intent to hinder, delay or defraud his creditor when he pledged the Dudley D. Allen, P.A.'s stock to his wife. With the first badge of fraud, there is consideration because Defendant pledged his shares of stock in Dudley D. Allen, P.A. as security for performance of all the obligations of leases the firm assumed. The second factor is in Plaintiff's favor. There is a close relationship between Defendant and transferee because Defendant and Mrs. Allen are husband and wife. The third badge of fraud is also in Plaintiff's favor because Mrs. Allen is not an attorney and Defendant retains ownership and control of the law firm. The fourth badge of fraud, however, is in Defendant's favor because his financial condition has not changed since he pledged his shares of stock to his wife.

The fifth badge of fraud is in the Plaintiff's favor because the Dudley D. Allen, P.A.'s stock is encumbered. (Pl.'s Ex. 12, 16). On December 11, 1995, Mrs. Allen and Defendant entered into an agreement entitled "Assumption of Leases Obligations by P.A., Guaranty of Performance by Shareholder, Pledge of stock by Shareholder." (Def.'s Ex. 14). Pursuant to this agreement, Mrs. Allen gave the Dudley D. Allen, P.A. permission to use the personal property and library books which she was leasing to Wilbur & Allen. (*Id.*). Dudley D. Allen, P.A. in turn agreed to pay and perform all obligations of Wilbur & Allen under the Leases. (*Id.*). Defendant, the sole shareholder of Dudley D. Allen, P.A., then guaranteed the performance of the law firm by delivering to Mrs. Allen his stock certificate for 100 shares of stock as security. (*Id.*). Mrs. Allen is allowed to keep the pledged stock as security for performance and guarantee until all obligations under the Leases have been fully performed. (*Id.*). Although the Chapter 7 Trustee can pursue Defendant's interest in the shares of stock on behalf of the creditors, Mrs. Allen's interest in the shares of stock would first have to be satisfied. Therefore, the cumulative effect of Defendant's course of conduct in the light of his onset of financial difficulties is great.

Finally, the general chronology of events and transaction under inquiry indicate that Plaintiff has obtained a $6,189,591.34 judgment against Defendant, and began execution on that judgment. Facing financial difficulties and wanting to protect non-exempt

assets from his creditors, Defendant pledged his shares of stock as security for the firm's performance of all the obligations of the Leases. Consequently, the firm's receivables is subject to Mrs. Allen's interest in the shares. After examining the totality of circumstances and having found four of the six badges in Plaintiff's favor, Plaintiff has shown that Defendant had the actual intent to hinder, delay or defraud his creditors when he pledged his shares of stock to Mrs. Allen within two months of the filing of his bankruptcy petition. Therefore, the Court concludes that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

Having decided that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A), the Court will not address the other counts of the complaint.

## CONCLUSION

Plaintiff has shown by preponderance of the evidence that Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A). The Court will enter a Judgment consistent with these Findings of Fact and Conclusions of Law.

## *JUDGMENT*

This proceeding came before the Court upon a complaint objecting to Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A), and seeking an exception to Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4). The trial was held on February 7, 1997, April 15, 1997 and April 29, 1997. Upon Findings of Fact and Conclusions of Law separately entered, it is

**ORDERED:**

1. Judgment is entered in favor of the Plaintiff Hanley C. Clark, Commissioner of Insurance for the State of West Virginia, in his official capacity as Receiver of George Washington Life Insurance Company, and against Defendant Dudley D. Allen.

2. Plaintiff's objection to Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A)

is sustained, and Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(2)(A).